IN THE MATTER OF DISCIPLINARY PROCEEDINGS
AGAINST C. SCHMIDT & SONS, INC., AND C. SCHMIDT
& SONS, INC., OF NEW JERSEY.

IN THE MATTER OF THE APPLICATION OF
WM. H. P. INC., OF NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1978—Decided April 18, 1978.

Before Judges MICHELS, PRESSLER and BILDER.

*Mr. Arnold M. Mellk* argued the cause for all appellants (*Messrs. Greenberg & Mellk,* attorneys).

*Mr. Leonard A. Peduto, Jr.,* Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General of New Jersey, and *Ms. Erminie L. Conley,* Deputy Attorney General of counsel).

The opinion of the court was delivered by

PRESSLER, J. A. D. These consolidated appeals from orders of the Division of Alcoholic Beverage Control (Division) raise a pivotal question of statutory construction, namely, whether applicants for Division licenses who have been convicted of crime are entitled to the substantive and procedural protections of the Rehabilitated Convicted Offenders Act, *N. J. S. A.* 2A:168–1 *et seq.,* as amended by *L.* 1974, c. 161. The Division, following the Attorney General's Formal Opinion 4–1975, concluded that such persons are

excepted from the act and continue subject to *N. J. S. A.* 33:1–25, which imposes an absolute disqualification from license-holding upon persons convicted of crimes of moral turpitude. We disagree with this conclusion.

All of the orders here appealed from were essentially based on the Division's finding that by reason of prior conviction appellant William Pflaumer was a disqualified person within the intendment of *N. J. S. A.* 33:1–25. The personal eligibility question was raised by Pflaumer himself by way of a declaratory ruling proceeding he initiated in the Division after having become the sole stockholder of both C. Schmidt & Sons, Incorporated, and its wholly owned subsidiary C. Schmidt & Sons, Inc. of New Jersey, each of which was the holder of a limited wholesale license. Because of the declaratory ruling adjudicating Pflaumer's ineligibility these licenses were suspended during the balance of their respective terms. The third of the orders appealed from is the Division's denial of a limited transportation permit to Wm. H. P. Inc. of N. J. The basis of that order was the Division's finding that Pflaumer, already declared ineligible, was the person actually in control of the corporate applicant. As to the disqualifying convictions themselves, it is undisputed that in 1972 Pflaumer pleaded guilty in the Federal District Court in Pennsylvania to a violation of 26 *U. S. C. A.* § 5683, the gravamen of that charge being his participation in a scheme to mislabel beer barrels. In 1974 he pleaded guilty to both counts of another federal indictment returned in Pennsylvania, the first charging a violation of 18 *U. S. C. A.* § 371 (conspiring with tavern owners in the maintaining of false records of beer purchases) and the second charging a violation of 18 *U. S. C. A.* § 1503 (obstructing justice by attempting to influence a jury witness). The Division's ineligibility adjudication rested upon the finding that the 1972 conviction and the 1974 obstruction of justice conviction were of crimes involving moral turpitude.

We are satisfied, despite the arguments of appellants to the contrary, that the Division did not err in its moral turpitude classification of the two convictions in question. See *State Bd. of Medical Examiners v. Weiner*, 68 *N. J. Super.* 468, 483–484 (App. Div. 1961), aff'd 41 *N. J.* 56 (1963); *De Moura v. Newark*, 90 *N. J. Super.* 225 (App. Div. 1966), certif. den. 46 *N. J.* 605 (1966). We are also satisfied that the Division's determination that Pflaumer actually controlled Wm. H. P. Inc. was supported by sufficient credible evidence on the record as a whole. *R.* 2:11–3(e)(1)(D). And see *Close v. Kordulak Bros.*, 44 *N. J.* 589, 599 (1965). Accordingly, the only meritorious question raised by these appeals is whether or not the moral turpitude disqualification of *N. J. S. A.* 33:1–25 was properly relied on by the Division.

The Rehabilitated Convicted Offenders Act, *N. J. S. A.* 2A:168A–1 *et seq.*, first adopted in 1968 and substantially amended and supplemented by *L.* 1974, *c.* 161, is predicated upon the express legislative finding that "it is in the public interest to assist the rehabilitation of convicted offenders by removing impediments and restrictions upon their ability to obtain employment * * * based solely upon the existence of a criminal record." *N. J. S. A.* 2A:168A–1.[1] Accordingly,

---

[1]For a more detailed explanation of this general purpose of the Act, see the Statement accompanying *L.* 1974, *c.* 161, reading in full as follows:

Laws governing at least 49 different professions and occupations in New Jersey discriminate against persons convicted of crimes. Sections of laws controlling certification and licensing for these jobs disqualify ex-offenders by stipulating that admission to those professions and occupations shall go only to those with good moral character and reputation, and not to those persons convicted of certain crimes or of crimes involving moral turpitude.

The President's Commission on Law Enforcement and the Administration of Justice in 1967, and more recently in 1973 recommended:

"The repeal of all mandatory provisions denying persons convicted of a criminal offense the right to engage in any occupation or obtain any license issued by government."

that section of the Act further declares that

> \* \* \* notwithstanding the contrary provisions of any law or rule or regulation issued pursuant to law, a person shall not be disqualified or discriminated against by any licensing authority because of any conviction for a crime, unless *N. J. S. A.* 2A:93–5 is applicable or unless the conviction relates adversely to the occupation, trade, vocation, profession or business for which the license or certificate is sought.

The primary implementation of these statements of legislative purpose and public policy is contained in *N. J. S. A.* 2A:168A–2, which prohibits every state and local licensing authority, without exception, from disqualifying license applicants on the basis of prior criminal conviction unless either the special disqualification of *N. J. S. A.* 2A:93–5 is applicable[2] or unless the licensing authority determines,

---

This bill is patterned after the law in Florida and after model legislation from Georgetown University Law Center endorsed by the American Bar Association National Committee on Employment Restrictions and Corrections and by the New Jersey Bar Association. The model legislation was prepared after studies and surveys of similar proposals in more than 20 states. The bill also is a response to the findings of Governor Cahill's Commission on Vocational Education in Correctional Institutions. That commission was critical of the arbitrary employment disqualifications for ex-convicts and recommended review of these laws. The bill also is consistent with the spirit and letter of the New Jersey Criminal Law Revision Commission report of 1971 which recommended that laws should establish a rational relationship between the criminal conduct of a man and the ensuing civil and employment disabilities imposed on him. Gainful employment is vital to any ex-offender's chance for returning freely to society. Testimony before the Assembly Institutions and Welfare Committee in 1972 on proposals to reform the correctional system included several recommendations for widening employment opportunities for former prisoners. The committee was told that the lack of jobs and financial security were major factors contributing to the high rates of parole violations and subsequent criminal acts.

[2] *N. J. S. A.* 2A:93–5, not here applicable, disqualifies from "holding any office or position of honor, trust or profit under this state" persons convicted of bribery of legislators, office-holders convicted of taking bribes in exchange for their votes and judicial officers convicted of accepting bribes.

upon consideration of eight enumerated factors,[3] that the conviction "relates adversely to the occupation, trade, vocation, profession or business for which the license or certificate is sought."

In view of the expansive and all-encompassing nature of these provisions, we are unable to accept the Division's thesis that the Legislature nevertheless intended to exclude it as a licensing authority subject to the act. It bases this argument first on the historically *sui generis* nature of legislative and administrative control of the alcoholic beverage industry and argues that because of the unique nature of that industry the moral turpitude standard of disqualification imposed by Title 33[4] was not intended by the Legislature to be affected by the general 1974 act. We do not agree. Every regulated business and profession has its own unique public impact which warrants its regulation in the first instance, many are of no less substantial and general public concern than the distribution of alcohol, and the use of the moral turpitude standard of disqualification in pre-1974 regulatory legislation was typical, customary and characteristic.[5] We see no

---

[3]These factors are the nature of the occupation for which license is sought, the nature, seriousness and date of the crime and the circumstances under which it was committed including the convicted person's then age and social conditions contributing to the crime, whether the crime was an isolated or repeated incident and evidence of rehabilitation.

[4]That standard appears not only in *N. J. S. A.* 33:1–25 but also in *N. J. S. A.* 33:1–26 and 33:1–31.2.

[5]Note, for example, by way of illustration rather than exhaustive catalogue, that prior to the 1974 act, licensing for all of the following professions and occupations affecting the public health, safety and welfare contained the moral turpitude disqualification: bio-analytical laboratories (*N. J. S. A.* 45:9–42.13) ; chiropracty (*N. J. S. A.* 45:9–16) ; dental hygiene (*N. J. S. A.* 45:6–40) ; dentistry (*N. J. S. A.* 45:6–7) ; marriage counselling (*N. J. S. A.* 45:8B–12) ; midwifery (*N. J. S. A.* 45:10–9) ; mortuary science (*N. J. S. A.* 45:7–62) ; nursing (*N. J. S. A.* 45:11–32) ; optometry (*N. J. S. A.* 45:12–11) ; pharmacy (N. J. S. A. 45:14–12) ; physical therapy

reason to assume, therefore, that of all of the licensing authorities operating in this State, the Legislature, without so stating, actually intended that the moral turpitude standard of only this one licensing authority would be unaffected by the act.[6]

The Division seeks further support for its position in the 1973 amendment of *N. J. S. A.* 33:1–26, which permits employment by a licensee (but not licensing) of a person convicted of a crime involving moral turpitude, with the approval of the Director and subject to rules and regulations of the Division. The Division's theory here is that this legislative action represents the full present extent of the Legislature's intention to relieve persons subject to the Division's control and regulation from the moral turpitude disqualification. If the 1974 act had preceded this amendment there might be merit to this argument. The fact, however, is that the comprehensive treatment of the right of convicted offenders to employment and licensing came later. We are aware of no canon of statutory construction which would suggest that an earlier piecemeal approach to a subject should take precedence over or constitute an exception to a later and more comprehensively remedial approach. See, *e. g., Service Armament Co. v. Hyland,* 70 *N. J.* 550, 559 (1976).

■■ Finally, the Division urges that it is excepted from the act by reason of *N. J. S. A.* 2A:168A–6, which provides in full as follows:

(*N. J. S. A.* 45:9–37.7) ; medicine and surgery (*N. J. S. A.* 45:9–16) ; private detective business (*N. J. S. A.* 45:19–16) ; and veterinary medicine (*N. J. S. A.* 45:16–6).

[6]Appellants, in urging that the Legislature not only did not intend to exclude alcoholic beverage licensing but that it expressly and affirmatively intended to include it within the remedial scope of the act, rely on a December 1976 affidavit of its sponsor so stating. We decline, however, to consider that non-contemporaneous statement as an appropriate extrinsic aid to construction, particularly in view of the lack of legislative ambiguity here. See, *e. g., Data Access Systems, Inc. v. State,* 63 *N. J.* 158, 165–166 (1973).

This act shall not be applicable to any law enforcement agency; however, nothing herein shall preclude a law enforcement agency in its discretion from adopting the policies and procedures set forth herein.

It claims to be an included law enforcement agency because of the scope of its statutory powers to enforce the alcoholic beverage laws. We do not, however, regard an analysis of its enforcement powers as here dispositive. In our view, the clear thrust of the statutory exception goes to law enforcement activities and the persons who perform them. It is entirely rational to insist that persons engaged in the enforcement of law themselves have no background of criminal conviction. And that we believe is the self-evident purpose and mandate of that provision. We do not construe it as applying to the licensing function of those agencies which also have law enforcement responsibilities, at least where the licensed activity is not itself law enforcement. We note, further, that it is typical for the agency charged with the licensing of a particular occupation or profession to have also been accorded the obligation to enforce the law and the rules and regulations governing it.[7] If we accepted the Division's view that its excepted law enforcement function immunized it from compliance with the act in respect of its licensing function, there would be few, if any, licensing authorities to which the act would remain applicable. That result certainly was not the legislative intent. We, therefore, hold that the Division's licensing functions are subject to the remedial provisions of *N. J. S. A.* 2A:168A-1 *et seq.*

Those portions of the orders appealed from which are based on the ineligibility of appellant William Pflaumer are

---

[7]See, *e. g., N. J. S. A.* 45:6-3, 45:7-37, 45:8B-13, 45:9-42.2, 45:11-24, 45:12-4, 45:14-3, and 45:16-3, relating respectively to the State Boards of Dentistry, Mortuary Science, Marriage Counsellor Examiners, Medical Examiners, Nursing, Optometrists, Pharmacy and Veterinary Medical Examiners.

reversed and these matters are remanded to the Division for further proceedings on that issue in conformance with *N. J. S. A.* 2A:168A–2. In all other respects the orders appealed from are affirmed.