221 N.J. Super. 71 (1987)
533 A.2d 982
EMIL GRANCAGNOLA, JUDY GOODMAN, JOHN ANTOLICH, LAWRENCE CASPARRO, JOSEPH JOHN, RICHARD MICHALOWSKI, ROBERT FERANO, CLARIDGE HOUSE I CONDOMINIUM ASSOCIATION AND CLARIDGE HOUSE II CONDOMINIUM ASSOCIATION, PLAINTIFFS-APPELLANTS,
v.
PLANNING BOARD OF THE TOWNSHIP OF THE BOROUGH OF VERONA, EUGENE FERNICOLA AND JOHN ZINGALI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1987.
Decided November 2, 1987.
*72 Before Judges PRESSLER, MUIR, Jr. and SKILLMAN.
Michael R. Casale argued the cause for appellants (Gaccione, Pomaco & Beck, attorneys, Michael R. Casale, on the brief).
Anthony P. Ambrosio argued the cause for respondent Planning Board of the Township of Verona (Ambrosio, Kyreakakis & DiLorenzo, attorneys, Anthony P. Ambrosio, on the brief).
*73 Owen T. Hughes argued the cause for respondent Fernicola (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys, Owen T. Hughes, on the brief).
No appearance was made on behalf of respondent Zingali.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant Eugene Fernicola (Fernicola) is the contract purchaser of premises located at 257 Pompton Avenue in Verona. Fernicola filed applications with defendant Verona Planning Board for conditional use and site plan approvals. The applications identified the proposed use as mixed commercial-residential. At the Board's request, the Verona Construction Code Official reviewed Fernicola's plans and concluded that they would not qualify as a conditionally permitted use.[1] The Construction Code Official further advised the Planning Board that Fernicola should either apply for a use variance or appeal his decision. Since a board of adjustment has exclusive jurisdiction to consider both applications for use variances and appeals from decisions of a construction code official, N.J.S.A. 40:55D-70(a) and (d), the thrust of the Construction Code Official's advice was that Fernicola should be required to seek relief from the Board of Adjustment. Instead, the Planning Board asked its own attorney whether Fernicola's proposed use was conditionally permitted. The attorney advised the Board orally at the hearing on the applications that Fernicola's proposed use was a "mixed use" which was conditionally permitted in the zone. The Board then considered Fernicola's applications on *74 their merits and granted both conditional use and site plan approval.[2]
Plaintiffs, who are owners of property in Verona, filed an action in lieu of prerogative writs challenging the Board's action. The Planning Board, Fernicola and John Zingali, the record owner of the property,[3] were named as defendants. Count I of the complaint alleged that the retail and storage uses of the property planned by Fernicola are not conditionally permitted in the zone. Count II alleged that the Planning Board lacked jurisdiction to grant Fernicola's application, because the Board of Adjustment had exclusive jurisdiction to review the Construction Code Official's decision that the proposed use was not permitted. Count III alleged that Fernicola's request for permission to erect a free standing sign on the premises required a use variance and hence the Planning Board lacked jurisdiction to grant such permission.
After the case was pretried, the parties filed cross-motions for summary judgment. By written opinion dated March 9, 1987, the trial court determined that judgment should be entered in favor of defendants. It held that the memorandum from the Construction Code Official to the Planning Board did not deprive the Board of jurisdiction to decide whether Fernicola's development plan constituted a conditionally permitted use. It further held that the Board had correctly concluded that Fernicola's proposal qualified as a mixed commercial and residential use and hence was a permitted conditional use. Finally, the trial court held that Fernicola's application to construct a free standing sign required only a bulk and not a use variance *75 and hence was within the jurisdiction of the Board to approve. See N.J.S.A. 40:55D-60.
On appeal, plaintiffs argue that the Board of Adjustment had exclusive jurisdiction to review the Construction Code Official's conclusion that Fernicola's development plans were not a conditionally permitted use and that the Planning Board therefore lacked jurisdiction to consider Fernicola's applications. Plaintiffs also argue that Fernicola's proposed retail and storage uses are not conditionally permitted uses in the zone and hence that he should have applied for a use variance.[4] The latter argument turns wholly on an interpretation of the municipal zoning ordinance. It is well established, as stated by Chief Justice (then Judge) Weintraub, that "... the interpretation of an ordinance is purely a legal matter as to which an administrative agency has no peculiar skill superior to the courts," Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96 (Law Div. 1956), aff'd 24 N.J. 326 (1957). Consequently, "[w]here the issue is thus one of law, the court's duty and authority are not curtailed by the circumstance that the issue happens to reach it via the board of adjustment." Ibid.[5] Since the interpretation *76 of Verona's zoning ordinance is a subject essentially within the province of the courts, we have decided to bypass the question whether the Construction Code Official's interpretation of the Verona zoning ordinance should have been appealed to the Board of Adjustment and to decide the dispositive question of whether Fernicola's development proposal constitutes a conditionally permitted use in the zone.
The applications filed with the Planning Board do not clearly disclose the intended use of the property. Moreover, as noted previously, we have not been furnished with transcripts of the full hearing before the Board. However, an affidavit by Fernicola's counsel submitted to the trial court states that the use will be in part "for the retail sale and service of vacuum cleaners." Fernicola's appellate brief reiterates that he intends to operate a retail store on the premises. Consequently, the question on which the appeal turns is whether a retail store is a conditionally permitted use in the zone where Fernicola's property is located.
The zoning district is designated as "Residential-Office." The only principal permitted use in the zone is one-family residences. The conditionally permitted uses are religious uses, educational uses, public areas, essential services, mixed uses and professional offices. The "mixed uses" conditionally permitted are referred to in the ordinance as "mixed residential and commercial uses." The ordinance contains no definition of "commercial uses." Fernicola, relying on what he characterizes *77 as the commonly understood meaning of the term, argues that an authorization for "commercial uses" includes retail stores.[6]
We have no doubt that an authorization for "commercial uses" could be properly construed in many contexts to include retail stores. However, we read the Verona Code to treat retail stores as a separate category of use from other commercial uses, because it provides separate, specific authorization for retail stores in several zones. Thus, in the "general business district," "retail businesses" are a principal permitted use, whereas "business offices" are a conditionally permitted use. In the "central business district" the principal permitted uses are "limited to business uses of retail sales and service type." And in the "restricted business district" the principal permitted uses are "[b]usiness or professional offices," "banks" and "commercial schools such as dancing, music and art studios."
Furthermore, while Verona's zoning ordinance contains no definition of the term "commercial use," it does include definitions of several related terms which reinforce our conclusion that a retail store is not a "commercial use." The terms defined by section 150-3 of the Verona Code include "Office, Commercial," which is defined as: "Any building housing a business which engages in activities other than producing or selling commodities or providing personal services." (Emphasis *78 added). This section of the Code separately defines the term "Retail Store" as: "A building or structure which houses a business selling commodities to the public." Thus, consistent with the other sections of the Verona Code, the definitions contained in section 150-3 treat retail stores as a separate use and not simply a kind of commercial use. Therefore, in our view the term "commercial use" may be reasonably interpreted to be synonymous with "Office, Commercial" and not to include a retail store.
This conclusion is also supported by the fact that the zone in question is a "Residential-Office" zone. The uses generally understood to be permitted in such a zone are described by a leading commentator in the field as excluding retail stores:
Office-Residential Districts
Another subcategory of commercial land use has been appearing with great frequency as a new zoning district in recent zoning ordinances, both in big cities and in the suburbs. In such districts, offices are permitted, often along with the multiple dwellings and various community facilities and institutional uses  and are distinguished from retail commercial development, and also of course from the subsequent commercial subcategories (amusements, heavy commercial, etc.).... The distinction between office and retail commercial is apparently based primarily on aesthetic grounds  that offices look less incompatible with residences  and perhaps also partly because retail operations may be messier outdoors. Williams, American Land Planning Law (1986 rev.) § 94.10 at 234.
Given this general understanding of the nature of a Residential-Office zone, it is reasonable to construe the "commercial uses" conditionally permitted as part of a mixed residential and commercial use to be commercial offices and not to include retail stores.
For the foregoing reasons the judgment of the Law Division is reversed and the matter is remanded for the entry of judgment in favor of plaintiffs.
NOTES
[1] The Construction Code Official's written opinion to the Planning Board was consistent with informal oral advice which he gave to Fernicola before Fernicola filed his applications with the Board.
[2] No transcript of the proceeding before the Board was submitted in connection with this appeal. However, pursuant to our request at oral argument, we have now been furnished with a transcript of the portion of the hearing at which the Board received and determined to accept the advice of its attorney that Fernicola's proposed use was conditionally permitted.
[3] Zingali did not answer the complaint and has not participated in any way in the proceedings.
[4] Plaintiffs' claim that a use variance was required for permission to erect a free standing sign has not been pursued on appeal.
[5] A recent decision of the Law Division holds that judicial review of a board of adjustment's interpretation of a zoning ordinance pursuant to N.J.S.A. 40:55D-70(b) is limited to whether such action was arbitrary, capricious or unreasonable. Alston v. Englewood Bd. of Adjustment, 216 N.J. Super. 221 (Law Div. 1986). This opinion rests on an interpretation of a 1984 amendment of N.J.S.A. 40:55D-70(b) which confers power upon a board of adjustment to interpret a zoning ordinance. However, the scope of judicial review of an agency's decision on a question of law, such as an interpretation of an ordinance, is not a function of the particular enabling legislation under which an agency operates. Rather, any agency's determination of a question of law is subject to de novo review in the courts. See Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973) (an appellate tribunal is "in no way bound by the agency's interpretation of a statute"); Bernstein v. Bd. of Trustees, Teachers Pension-Security Fund, 151 N.J. Super. 71, 76 (App.Div. 1977) ("It is basic to our system of appellate review that we are not bound by the Board's interpretation of a statute or its determination of a legal issue.") Indeed, the reason exhaustion of administrative remedies is often not required where purely questions of law are presented is that the courts do not defer to agencies' decisions on such questions. See Nolan v. Fitzpatrick, 9 N.J. 477, 486-487 (1952). Thus, we are satisfied that Jantausch still accurately reflects the applicable standard of judicial review of purely legal determinations by a municipal land use agency. Accordingly, we overrule Alston v. Englewood Bd. of Adjustment.
[6] Fernicola and the Board also rely upon an affidavit by the Board's attorney which states that the draftsman of the ordinance which created the "Residential-Office" zone told him that he intended to include a retail use as part of a mixed residential and commercial use. For several reasons this affidavit should not be considered in interpreting the intent of the ordinance. First, it is clearly hearsay since the affidavit was not submitted by the draftsman himself. Second, the draftsman's recollection of the intent of the ordinance is not a part of the legislative history and under the circumstances here is not an appropriate aid in its interpretation. See Dumont Lowden, Inc. v. Hansen, 38 N.J. 49, 56 (1962); In re Schmidt & Sons, 158 N.J. Super. 595, 601 n. 6 (App.Div. 1978), mod. 79 N.J. 344 (1978).