291 N.J. Super. 1 (1996)
676 A.2d 1095
HENRY PULLEN, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF SOUTH PLAINFIELD PLANNING BOARD AND HENRY FEINBERG, T/A RITE-AID PHARMACY & STORE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 1996.
Decided April 30, 1996.
*3 Before Judges PETRELLA and EICHEN.
Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, attorneys for appellant (James F. Clarkin III, on the brief).
Renato R. Biribin, attorney for respondent Township of South Plainfield Planning Board.
O'Brien, Liotta & Mandel, attorneys for respondent Henry Feinberg t/a Rite-Aid Pharmacy & Stores (Stephen L. Ritz, of counsel and on the brief; Marie Seitz, also on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Henry Pullen, a residential neighbor, opposed a variance application and filed a complaint in lieu of prerogative writs challenging subdivision approval and related variances granted to Henry Feinberg, t/a Rite-Aid Pharmacy and Store. On this appeal from the judgment of the Law Division dismissing his suit, Pullen challenges the judge's decisions: (1) interpreting N.J.S.A. 40:55D-70c(2)[1] as allowing the benefit of the entire development proposal to be considered; (2) affirming the grant of a "flexible c" variance by the Township of South Plainfield Planning Board (Planning Board); and, (3) dismissing his complaint. Feinberg's cross-appeal challenging the Law Division judge's interpretation of the ordinance to characterize the subject property as a "corner lot" has been withdrawn.
*4 The property at issue in this case is located in an OBC-1 zone[2] in South Plainfield. The property was subdivided from two existing lots, is T-shaped, and is between and fronts on the parallel streets of Park Avenue and Holly Avenue. The existing lots were former car lots that were partially paved, but otherwise vacant.
The Planning Board had determined that Feinberg's lot was not a "corner lot" under the ordinance[3] and, thus, only a twenty-foot (instead of a thirty-foot) setback was required on the portion of the lot fronting Holly Avenue. Alternatively, the Planning Board, in its resolution and amended resolution of approval, concluded that even if the subject property were considered a "corner lot" under the ordinance, it would grant a variance from the setback requirements on Holly Avenue to twenty feet.[4] In addition, a *5 variance was granted allowing for thirty-three (instead of the required forty) parking spaces, exclusive of another ten spaces on the lot to which a neighboring business had a nonexclusive easement during its hours of operation.
In the process of considering the application, the Planning Board had expressed various concerns about the size of the building and its location, and the applicant revised his original plan in light of those suggestions. The Planning Board granted the subdivision, including the front yard variance on Holly Avenue, subject to the following conditions: (1) an easement providing for eight parking spaces would be obtained; (2) a storm water management system would be installed for the remaining portion of land on Holly Avenue; and, (3) an easement to construct a six-foot board-on-board fence on the east end of the parking easement would be granted. Site plan approval was also given, subject to certain waivers and conditions.
The Planning Board noted that there would be no ingress or egress from the property along Holly Avenue. It found that the development would benefit the area and that locating the parking area in front of the store was a positive aspect of the development proposal. Further, it recognized that because the surrounding location was a retail area there would be no adverse impact on property values. The Planning Board specifically determined that the development of the building in the manner proposed would not create a negative impact on the residences on Holly Avenue. The resolution also found:
G. The balancing of the effect of the application on the immediate area and the surrounding community would allow for the development of the property in this *6 fashion, namely, because it is a permitted use and the variances requested have been minimized and would not be detrimental or adverse to the master plan or the zoning ordinance of the Borough of South Plainfield....
The Law Division Judge rejected Pullen's argument that a "flexible c" variance allowed only the benefits from the grant of the suggested variance to be considered, rather than the benefits of the entire proposal.
In reviewing a determination by a local agency, the trial judge, as does an appellate court, accords due deference to the local agency's broad discretion in planning and zoning matters and reverses a local agency's decision only if arbitrary, capricious, or unreasonable. Kramer v. Board of Adj., Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965); Nunziato v. Planning Bd., 225 N.J. Super. 124, 133, 541 A.2d 1105 (App.Div. 1988). See Medical Realty Assocs. v. Board of Adj., 228 N.J. Super. 226, 233, 549 A.2d 469 (App.Div. 1988). The actions of municipal boards are presumed valid, and we do not interfere, absent a clear showing that the ordinance or action of the agency is arbitrary or unreasonable. See Manalapan Builders Alliance, Inc. v. Township Committee, 256 N.J. Super. 295, 304, 606 A.2d 1132 (App.Div. 1992); New Jersey Shore Builders Ass'n. v. Township of Ocean, 128 N.J. Super. 135, 137, 319 A.2d 255 (App.Div.), certif. denied, 65 N.J. 292, 321 A.2d 253 (1974). Our cases also recognize that local officials are "thoroughly familiar with their communities' characteristics and interests" and are best suited to make judgments concerning local zoning regulations. See Ward v. Scott, 16 N.J. 16, 22-23, 105 A.2d 851 (1954); Bellington v. Township of East Windsor, 32 N.J. Super. 243, 249, 108 A.2d 179 (App.Div. 1954), aff'd, 17 N.J. 558, 112 A.2d 268 (1955).
Likewise, our scope of review is limited when considering a decision of a municipal planning board. We do not review the wisdom of its decision, rather its decision "is presumed valid and should not be set aside unless it is arbitrary, capricious, or unreasonable." Davis Enterprises v. Karpf, 105 N.J. 476, 485, 523 A.2d 137 (1987). Accord Kramer v. Board of Adj., Sea Girt, 45 N.J. 268, 285, 212 A.2d 153 (1965). Nor does a reviewing court *7 "suggest a decision that may be better than the one made by the ... planning board," we merely "determine whether the board could reasonably have reached its decision." Davis Enterprises v. Karpf, supra, 105 N.J. at 485, 523 A.2d 137; Kramer v. Board of Adj., Sea Girt, supra, 45 N.J. at 285, 212 A.2d 153. "[T]he Board's factual conclusions are entitled to great weight and, like those of an administrative body, ought not be disturbed unless there is insufficient evidence to support them." Rowatti v. Gonchar, 101 N.J. 46, 52, 500 A.2d 381 (1985). Indeed, planning boards, because of their familiarity and particular knowledge of the community's characteristics and interests, must be allowed wide latitude in the exercise of their delegated discretion. See Kramer v. Board of Adj., Sea Girt, supra, 45 N.J. at 296, 212 A.2d 153; Hawrylo v. Board of Adj., Harding Tp., 249 N.J. Super. 568, 578, 592 A.2d 1236 (App.Div. 1991).
The Law Division Judge addressed the Planning Board's approval of Feinberg's application as properly granted under N.J.S.A. 40:55D-70c(2). The grant of a "c(2)" or "flexible c" variance must be rooted in the purposes of zoning and planning itself and advance the purposes of the Municipal Land Use Law (MLUL). Kaufmann v. Planning Bd., 110 N.J. 551, 562, 542 A.2d 457 (1988). While the "c(2)" variance must comport with what serves the general welfare, such a variance may be justified by "the other specific purposes of zoning set forth in the MLUL." Id. at 563, 542 A.2d 457 (quoting Medici v. BPR Co., 107 N.J. 1, 18, 526 A.2d 109 (1987) (explaining that the standard has generally been defined in relation to the purposes of zoning set forth in N.J.S.A. 40:55D-2). In other words, as the Kaufmann Court discussed: "By definition, then, no c(2) variance should be granted when merely the purpose of the owner will be advanced[,]" but rather "[t]he grant of approval must actually benefit the community in that it represents a better zoning alternative for the property." [110 N.J. at 563, 542 A.2d 457].
The "c(2)" variance "vest[s] a larger measure of discretion in local boards in the limited area of cases." Id. at 566, 542 A.2d 457. *8 Our review is restricted to a determination of the consistency of the exercise of that discretion with "its inherent limitation to the affirmative advancement of zoning purposes and by the negative criteria of N.J.S.A. 40:55D-70." Ibid. In Wawa Food Market v. Ship Bottom Planning Bd., 227 N.J. Super. 29, 40, 545 A.2d 786 (App.Div.), certif. denied, 114 N.J. 299, 554 A.2d 853 (1988), we stated:
The Board must: (1) consider whether the specific variances sought will advance the purposes of the MLUL; (2) weigh the benefits of the variance against "any detriment"[;] and (3) consider whether they can be granted without substantial detriment to the public good or impairment of the intent and purpose of the zoning ordinance.
With respect to the third element of the analysis, a variance applicant bears the primary "burden to prove that the borough's zoning plan will not be substantially impaired." Loscalzo v. Pini, 228 N.J. Super. 291, 304, 549 A.2d 859 (App.Div. 1988), certif. denied, 118 N.J. 216, 570 A.2d 972 (1989). In other words, our inquiry becomes whether the Planning Board acted unreasonably in concluding from the record submitted to it that a "flexible c" variance would not adversely impact either the neighborhood or the zoning plan and would advance the general purposes of the MLUL.
With these principles in mind, we turn to Pullen's arguments on this appeal. We reject his contention that the Planning Board made inadequate findings to support its conclusion. The Planning Board's thirteen-page amended resolution contains sufficient findings to support its determination. Based on the record, we are satisfied that the Planning Board's determination was fully warranted. See Commercial Realty & Resources Corp. v. First Atlantic Properties Co., 122 N.J. 546, 566, 585 A.2d 928 (1991).
We turn next to Pullen's argument that a "flexible c" variance should be granted only where the benefits derived solely from the requested deviation substantially outweigh any detriment caused thereby and that the Law Division judge's determination to the contrary was error. Pullen's reading of N.J.S.A. 40:55D-70c(2) is much too restrictive and overlooks the entire thrust of *9 that provision. As noted above, Kaufmann states that "because of its lesser moment the c(2) variance need not be so closely confined to the general welfare [but] ... may take its meaning as well from the other specific purposes of zoning set forth in the MLUL." Kaufmann, supra, 110 N.J. at 563, 542 A.2d 457. The focus under a c(2) variance analysis is "on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community." Ibid.
In Bressman v. Gash, 131 N.J. 517, 621 A.2d 476 (1993), the Supreme Court upheld the planning board's grant of a c(2) variance allowing a garage to be built with a side entry. The Court found that the record supported the planning board's findings, particularly that granting the variance would allow the property to be in keeping with the character of the area and promoted "a desirable visual environment[.]" Id. at 530, 621 A.2d 476. In its analysis, the Court noted that "the Planning Board properly considered the aesthetic effect of [the applicant's] proposal in deciding whether the grant of the variance would advance that purpose." Id. (emphasis added).
As stated, a variance cannot be considered in isolation, but must be considered in the context of its effect on the development proposal, the neighborhood, and the zoning plan. Our cases do not require such a narrow reading of the statutory provisions as espoused by Pullen here, which would restrict the benefits only to those obtained by permitting the deviation. Thus, we conclude, as the Court did in Bressman, that the Planning Board properly considered Feinberg's entire proposal in granting the c(2) variance.
We have reviewed Pullen's remaining contentions in light of the record and the arguments presented in the briefs and conclude that they are without merit. R. 2:11-3(e)(1)(A), (D) and (E). We merely note that the Planning Board's findings that the property was a "blight" on the area and that the development would be a marked improvement and consistent with the uses in the area are supported by sufficient credible evidence in the *10 record. Likewise, the Planning Board's conclusion that there was no negative impact by the proposed development with the setback variance is supported in the record.
Affirmed.
NOTES
[1] Referred to as a "flexible c" variance.
[2] The OBC-1 zone is the local business zone, and the proposed Rite-Aid store is a permitted use therein.
[3] The relevant portion of the ordinance defining a "corner lot" reads as follows:

For the purpose of regulating the locations of buildings on corner lots, and on lots extending through between two parallel streets, all portions of a corner lot or a through lot which fronts on a public street shall be subject to the front yard requirement of the zone district in which said corner lot or through lot is located.
The front yard setback in the OBC-1 zone is thirty feet, and the rear yard setback is twenty feet. A "through lot" is defined in the ordinance as "an interior lot having frontage on two (2) streets." In defining the term "street," the ordinance does not mention the impact that use restrictions or the availability of access would have upon determining whether a lot fronts a street. For setback purposes, Feinberg's property was correctly treated the same as a corner lot so that two front setbacks applied. In addition, bulk variances were required if the building setback were to be less than that required for a front yard on either street.
[4] Because the Planning Board's decision involved an interpretation of the zoning ordinance, the Law Division judge decided to "remand" or refer the matter to the Zoning Board of Adjustment for its interpretation of the ordinance, although there was no need to have done so. As it turned out, the Board of Adjustment split on its interpretation by a three-to-three vote, and the matter was returned to the trial court. The judge concluded that Feinberg's lot was to be treated as a "corner lot" but nonetheless upheld the Planning Board's grant of the setback variance and approval of the subdivision application. The fact that the zoning board entertained an inquiry for the interpretation of the zoning ordinance provision relating to a "corner lot" was not a ruling on a development application and, thus, was not a denial of any development or variance application. See Ientile, Inc. v. Zoning Bd. of Adj., 271 N.J. Super. 326, 332, 638 A.2d 882 (App.Div. 1994) (Skillman, J.A.D., concurring). Moreover, the court is not bound by a legal interpretation of an ordinance by either the planning or the zoning board. Grancagnola v. Planning Bd., 221 N.J. Super. 71, 75, 533 A.2d 982 (App.Div. 1987).