693 A.2d 180

NEW BRUNSWICK CELLULAR TELEPHONE COMPANY D/B/A COMCAST CELLULAR ONE, PLAINTIFF, v. TOWNSHIP OF EDISON ZONING BOARD OF ADJUSTMENT, DEFENDANT.

Superior Court of New Jersey
Law Division Middlesex County

Decided February 7, 1997.

458

*Gregory J. Czura,* for plaintiff.

*John M. Lore,* for the defendant (*DeMarco* and *Lore,* attorneys).

WOLFSON, J.S.C.

## I. *FACTUAL BACKGROUND*

New Brunswick Cellular Telephone Company d/b/a Comcast Cellular One, ("Comcast") appeals from a decision of the Zoning Board of Adjustment of the Township of Edison ("Board") denying its application for a variance from the requirement that cellular towers not be located within one thousand (1,000) feet of any school or residential dwelling.[1] The proposed cellular communica-

---

[1] Although Comcast also required a minimum floor area variance and a design waiver from the minimum interior driveway width, it is doubtful that such separate applications or approvals were actually required, since the full layout of the project was before the Board in connection with the d(3) variance applica-

tions facility consists of an 80 foot high freestanding monopole with twelve (12) sectorized antennas and an equipment shelter, on 1.37 acres in the LI zone.[2]

Hearings were held on Comcast's application before the Board on May 30, 1995, September 27, 1995, and October 17, 1995. At the hearings, testimony was presented by several witnesses on behalf of the applicant that: 1) the site of the proposed facility would be approximately 100 feet away from the nearest adjacent residential area; 2) there were no known health hazards related to the proposed installation inasmuch as the anticipated radio wave emissions would be approximately 635 times below that permitted by the New Jersey Administrative Code; 3) an additional tower was needed in the Edison area due to the large number of telephone users, causing the existing capacity of the cellular system to become overloaded; and 4) the use of cellular transmissions was important to assist local emergency squads, fire departments, the police and the 911 system.

---

tion. *See DeSimone v. Greater Englewood Housing Corp. No. 1*, 56 *N.J.* 428, 443, 267 *A.2d* 31 (1970); *see also O'Donnell v. Koch*, 197 *N.J.Super.* 134, 143–145, 484 *A.2d* 334 (App.Div.1984) (granting a subsection "d" variance necessarily included granting of bulk variances, even where no bulk variances specifically requested and no specific findings made by Board); and *see Kessler v. Bowker*, 174 *N.J.Super.* 478, 484, 417 *A.2d* 34 (App.Div.1979) (granting of variance for "special reasons" negates need to proceed under subsection "c" for ancillary bulk variances). On this record, the Board could not reasonably have denied these *de minimus*, ancillary requests for relief.

2 The LI (light industrial) zone permits freestanding telecommunications towers, as well as dish antennas which transmit microwaves from a tower rooftop, water tower or other elevated location, as conditional uses. One condition requires that the antennas or dishes be located no less than one thousand (1,000) feet from any school or residential dwelling. Restaurants, transportation facilities and truck depots, automotive repair (inclusive of body repair and painting) and railroad freight yards are also conditionally permitted. However, any principal or accessory structure associated with such a use may be located as close as fifty (50) feet from any lot line. A buffer of ten (10) feet of planting or earthen berm is required between the freight yard use and any coincidental residential boundary line.

On October 17, 1995, the Board denied Comcast's variance application. A Complaint in Lieu of Prerogative Writs was thereafter filed on January 26, 1996, seeking to reverse the Board's denial. That denial was vacated by this Court on July 12, 1996, and the matter was remanded back to the Board for reconsideration in accordance with the standards set forth in *Coventry Square v. Westwood Zoning Bd. of Adjustment*, 138 *N.J.* 285, 650 *A.*2d 340 (1994) and *Sica v. Bd. of Adjustment of Tp. of Wall*, 127 *N.J.* 152, 603 *A.*2d 30 (1992).

On September 17, 1996, the Board again considered the plaintiff's application and affirmed its prior decision to deny the variance. The resolution memorializing the Board's decision concluded that the applicant had failed to demonstrate that the deviation from the requirements of the ordinance was justified,[3] and concluded that the application would adversely impact the Zone Plan and the Master Plan of the Township of Edison.

## II. *THE STANDARD OF REVIEW*

In reviewing any decision of a zoning board, the court's power is tightly circumscribed. In recognition of the fact that local officials are "thoroughly familiar with their community's characteristics and interests and ... are undoubtedly the best equipped to pass initially on such applications for variance," *Ward v. Scott*, 16 *N.J.* 16, 23, 105 *A.*2d 851 (1954), a board's decisions, when factually grounded, are cloaked with a presumption of validity, which presumption attaches to both the acts and the motives of its members. Public bodies, because of their peculiar

---

[3] The Board also based its original denial, in part, on the applicant's failure to attempt to locate the cellular tower at other locations within the area targeted on its map, its failure to demonstrate that the tower was necessary for the convenience of the community, and its contention that the service provided by the applicant did not rise to the status of "inherently beneficial." The Board further found that the proposed tower would cause "tower blight," would detract from the aesthetic character of certain portions of the Township, and would violate the negative criteria of *N.J.S.A.* 40:55D–70(d).

knowledge of local conditions, are thus allowed wide latitude in the exercise of the discretion delegated them under Municipal Land Use Law. *N.J.S.A.* 40:55D–1 through 136.

So long as there is substantial evidence in the record, the court may not interfere with or overturn the factual findings of a municipal board. Even when doubt is entertained as to the wisdom of the Board's acceptance of certain evidence or its rejection of other testimony, there can be no judicial declaration of invalidity absent a clear abuse of discretion by the board. *Pullen v. So. Plainfield Planning Bd.,* 291 *N.J.Super.* 303, 312, 677 *A.*2d 278 (Law Div.1995), *aff'd,* 291 *N.J.Super.* 1, 6, 676 *A.*2d 1095 (App.Div.1996). Consequently zoning determinations may be set aside only when the court has determined the decision to be arbitrary, capricious or unreasonable. *Medici v. BPR Co.,* 107 *N.J.* 1, 15, 526 *A.*2d 109 (1987); *Kramer v. Sea Girt,* 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965).

On the other hand, however, a board's determination or interpretation regarding a question of law is subject to a *de novo* review by the courts, *Grancagnola v. Planning Bd. of Twp. of Verona,* 221 *N.J.Super.* 71, 75–76 n. 5, 533 *A.*2d 982 (App.Div. 1987), and is entitled to no deference since a zoning board has "no peculiar skill superior to the courts" regarding purely legal matters. *Jantausch v. Bor. of Verona,* 41 *N.J.Super.* 89, 96, 124 *A.*2d 14 (Law Div.1956) *aff'd,* 24 *N.J.* 326, 131 *A.*2d 881 (1957); *Pagano v. Zoning Bd. of Adjustment,* 257 *N.J.Super.* 382, 396–97, 608 A.2d 469 (Law Div.1992).

### III. *CONDITIONAL USE VARIANCE UNDER N.J.S.A. 40:55D–70(d)(3)*

*N.J.S.A.* 40:55D–70(d)(3) provides that a "special reasons" variance is required if there is a deviation from a specification or standard pertaining solely to a conditional use. While the proposed cellular tower was found to be a permitted conditional use, the Board required the applicant to apply for a (d)(3) variance

since the tower would exceed the 1,000 foot distance limitation applicable to conditionally permitted telecommunication towers in the LI zone.

 *Coventry Square, supra,* 138 *N.J.* at 287, 650 *A.*2d 340, established the standards for reviewing an application to deviate "from a specification or standard . . . pertaining solely to a conditional use" under *N.J.S.A.* 40:55D–70(d)(3). In developing the standards, the Supreme Court recognized that a conditional use could not be viewed in the same light as uses which are prohibited throughout the zone. Since a conditional use is not prohibited, it *need not meet* the stringent standards applicable to a d(1) commercial-use variance which the court summarized in *Medici v. BPR Co., supra,* 107 *N.J.* at 9–18, 526 *A.*2d 109. Still, both the d(1) and the d(3) variances require the applicant prove "special reasons" and satisfy the negative criteria. However, in a d(3) context, the primary focus is not on the use itself, which is permitted, but rather on the effect of non-compliance with a condition pertaining solely to the conditional use. *Coventry Square, supra,* 138 *N.J.* at 287, 650 *A.*2d 340.

 Instead, the Board below rejected the application, in part, because Comcast did not address whether a suitable alternative location for the proposed tower existed. While such a burden might arguably be imposed in a d(1) context where the claimed "special reason" is "particular suitability", it is *plainly inapplicable* where the applicant's proposed use is either permitted or conditionally permitted, or where an inherently beneficial use is involved, which itself, satisfies the "special reasons" requirement. *Compare, Mocco v. Job,* 56 *N.J.Super.* 468, 477, 153 *A.*2d 723 (App.Div.1959) (insufficient showing that particular site *must* be location for the proposed d(1) *use* variance) *and Medici, supra,* 107 *N.J.* at 24, 526 *A.*2d 109 (in a commercial (d)(1) variance application, "special reasons" requires proof that the subject property was "particularly suitable" for the proposed, prohibited use); *with, New Brunswick v. Old Bridge,* 270 *N.J.Super.* 122, 127 n. 3, 636 *A.*2d 588 (Law Div.1993) (applicant's failure to consider alter-

native, or even more suitable locations has no relevance where special reasons are not grounded in "particular suitability" but rather are satisfied by inherently beneficial nature of the proposed use).

The burden thus required to obtain or sustain a (d)(1) variance is *far more onerous* than that imposed where the use is permitted, albeit subject to conditions. *Coventry Square, supra,* 138 *N.J.* at 298, 650 *A.*2d 340 (burden of proof required to sustain a use variance is "too onerous" for a conditional use variance). By way of contrast, an applicant's inability to comply with a particular condition often will not materially affect the appropriateness of the site for the conditional use. *Coventry Square, supra,* 138 *N.J.* at 297, 650 *A.*2d 340. It is therefore evident that the lawful focus in this case was *not* whether there were other, "more suitable" sites, but rather, whether the appropriateness of the applicant's site was materially affected by its inability to comply with a distance limitation which applies only to towers and satellite dishes but not to any of the other conditionally or completely permitted uses in the zone. *Id.* at 298, 650 *A.*2d 340.

Nevertheless, applying the *Coventry Square* analysis, and considering the inherently beneficial nature of the tower, it cannot reasonably be concluded from the evidence in this record that this deviation affected the overall suitability of this site for the proposed facility. Within the same zone, far more intrusive industrial uses are permitted, all with substantially greater negative impacts, none of which are subject to a 1000 foot buffer requirement. Examples of such uses which are permitted in the zone include: three-story office buildings, scientific and research laboratories; manufacturing, processing, finishing, fabrication and the assembly of products; warehousing and distribution centers; packaging and bottling plants; coal storage plants; machine shops; and newspaper and printing establishments. Furthermore, conditionally permitted uses in the zone include *transportation facilities, truck depots,* and *railroad freight yards,* all of which require only *50 foot* buffers from residential or other lot lines. Finally, because the

tower would be obscured from most of the residential area, the continued suitability of the site cannot reasonably be disputed.

While *N.J.S.A.* 40:55D–70(d) does not expressly require a balancing of the positive and negative criteria, where, as here, the requested variance involves an inherently beneficial use (discussed *infra* at Sec. III(A)), our Supreme Court has directed that municipal boards engage in a four-step procedure in assessing whether the grant of the variance would cause a *substantial* detriment to the public good. *Sica, supra,* 127 *N.J.* at 164–65, 603 *A.2d* 30. First, the Board is required to identify the public interest at stake. Second, it must identify any detrimental effect which it perceives would result if the variance were to be granted. Third, in order to reduce any perceived detrimental effect, the Board must, if practicable, impose reasonable conditions on the use. Finally, the Board must weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a *substantial* detriment to the public good. *Id.* at 165–66, 603 *A.2d* 30. Even a cursory review of the record reveals the Board's utter failure to comply with this procedural mandate, emanating not from this court, but from the Supreme Court.

That a d(3) variance is sought, rather than a use variance under (d)1, is of no moment. Where the proposed use is inherently beneficial, the conditional use variance application is, at a minimum, entitled to the same level of "protective" scrutiny normally afforded to uses which are prohibited. Indeed, if a contrary rule were adopted, a far greater burden would be imposed upon an applicant seeking the less intrusive variance [4], since the Board would be relieved of its obligation to ameliorate, to the extent achievable through the imposition of reasonable conditions,

---

[4] *Compare, Coventry Square, supra,* 138 *N.J.* at 297–98, 650 *A.2d* 340 (conditional use variances need not meet the "stringent" standard applicable to a commercial use variance sought under d(1)), *with Medici, supra,* 107 *N.J.* at 21, 526 *A.2d* 109 (enhanced burden of proof required to reconcile commercial d(1) variance request with legislative omission of proposed use from zone).

any detriment anticipated from a variance grant, and from its obligation thereafter to balance the positives and negatives attributable to the proposed use. *Compare, Sica, supra,* 127 *N.J.* at 152, 164–167, 603 *A.*2d 30, *with, Medici, supra,* 107 *N.J.* at 21, 526 *A.*2d 109; *see also New Brunswick Cellular, supra,* 270 *N.J.Super.* at 136 n. 13, 138, 636 *A.*2d 588. As the Supreme Court has noted, the balancing procedure "properly" renders it "more difficult" for municipalities to exclude inherently beneficial uses. *See Sica, supra,* 127 *N.J.* at 166, 603 *A.*2d 30; *see also New Brunswick Cellular, supra,* 270 *N.J.Super.* at 138 n. 14, 636 *A.*2d 588. Given the heightened judicial scrutiny of municipal attempts to exclude inherently beneficial uses, relieving a municipal board of its amelioration and balancing obligations would thus lead to an anomalous result which would "violate the spirit, if not the precise rationale of *Sica.*" *New Brunswick Cellular, supra,* 270 *N.J.Super.* at 138, 636 *A.*2d 588.

## A. THE POSITIVE CRITERIA

██ The term "special reasons" takes its meaning from the general purposes of the zoning laws. *Nynex Mob. Comm. Co. v. Hazlet Tp.,* 276 *N.J.Super.* 598, 608, 648 *A.*2d 724 (App.Div.1994); *Burbridge v. Mine Hill Tp.,* 117 *N.J.* 376, 384, 568 *A.*2d 527 (1990); *see N.J.S.A.* 40:55D–2. Even though an applicant for a d(3) variance may establish "special reasons" by demonstrating that the use continues to be an appropriate use for the site (notwithstanding a failure to comply with a condition pertaining solely to a conditional use), *Coventry Square, supra,* 138 *N.J.* at 287, 650 *A.*2d 340, where the proposed use is "inherently beneficial," the positive criteria are deemed to be met as a matter of law. *Sica, supra,* 127 *N.J.* at 165, 603 *A.*2d 30; *Nynex, supra,* 276 *N.J.Super.* at 608, 648 *A.*2d 724.[5]

---

[5] While "inherently beneficial" uses often fall into the category of non-profit entities which benefit the community, various profit-making ventures have been deemed to be inherently beneficial. Among those commercial uses which have been judicially recognized as being inherently beneficial are private, for-profit

In *Nynex, supra,* the Appellate Division expressly considered and decided that a cellular communications facility, consisting of antennae located on top of an existing water tower and an equipment shelter, was inherently beneficial because the proposed facility filled the gaps in service coverage, improved cellular phone communications, and provided "emergency benefits available through up-to-date cellular communications." *Id.* at 612, 648 *A.*2d 724. *See also Yahnel v. Board of Adjustment,* 79 *N.J.Super.* 509, 518, 192 *A.*2d 177 (App.Div.), *certif. denied,* 41 *N.J.* 116, 195 *A.*2d 15 (1963), ("[i]mproved telephonic communications are obviously a subject matter of high relationship to the welfare of the entire community."); *Alpine Tower v. Mayor of Alpine,* 231 *N.J.Super.* 239, 249, 555 *A.*2d 657 (App.Div.1989), ("[t]he regional public benefit derived from plaintiff's communications facility and the need for the proposed new building to house the sensitive modern electronic equipment used in the facility provide additional grounds for ... special reasons."); *see also Kingwood v. Board of Adjustment,* 272 *N.J.Super.* 498, 503–06, 640 *A.*2d 356 (Law Div.1993) (197–foot tower was inherently beneficial, especially in "situations where immediate communication is critical to safety."); *and see New Brunswick Cellular, supra,* 270 *N.J.Super.* at 136–38, 636 *A.*2d 588 (160–foot cellular tower sufficiently promotes "the general welfare of the citizens and businesses of this State to qualify as inherently beneficial."). In describing the benefits

senior citizen congregate-care facilities, *Kunzler v. Hoffman,* 48 *N.J.* 277, 288, 225 *A.*2d 321 (1966) and *Jayber, Inc. v. Township of W. Orange,* 238 *N.J.Super.* 165, 174–75, 569 *A.*2d 304 (App.Div.1990); a 120–bed nursing home, *Urban Farms, Inc. v. Borough of Franklin Lakes,* 179 *N.J.Super.* 203, 212, 431 *A.*2d 163 (App.Div.), *certif. denied,* 87 *N.J.* 428, 434 *A.*2d 1099 (1981); a private day care nursery, *Three L Corp. v. Newark Board of Adjustment,* 118 *N.J.Super.* 453, 457, 288 *A.*2d 312 (Law Div.1972); a tertiary sewage treatment plant to serve a commercial trailer park, *Wickatunk Village, Inc. v. Township of Marlboro,* 118 *N.J.Super.* 445, 452, 288 *A.*2d 308 (Law Div.1972); a head-trauma facility *Sica, supra,* 127 *N.J.* at 159, 603 *A.*2d 30; and cellular towers, *Nynex, supra,* 276 *N.J.Super.* at 609, 648 *A.*2d 724 and, *New Brunswick Cellular, supra,* 270 *N.J.Super.* at 136–37, 636 *A.*2d 588 (Law Div.1993).

inherent in improved cellular phone systems, this court has explained:

> The enhanced ability of police, fire, or other rescue personnel to provide emergency services by virtue of an enhanced transmission range, or immediate, on the scene reporting ... cannot be overstated. Whether it facilitates the rescue of a stranded traveler on a deserted highway, increases business productivity or efficiency, or simply facilitates the exchange of information, ... the proposed facility sufficiently promotes the general welfare of the citizens and businesses of this State to qualify as inherently beneficial.
>
> [*New Brunswick Cellular, supra,* 270 *N.J.Super.* at 137, 636 *A.2d* 588.]

■ Since "special reasons" were established as a matter of law, the Board was required to identify the regional benefits associated with improved telecommunication services and thereafter to balance them against any perceived detriment.

## B. *THE NEGATIVE CRITERIA*

■ In addition to proof of special reasons, the applicant was required to address the so called "negative criteria" and to demonstrate, on balance, that the variance will not result in *"substantial* detriment to the public good and will not *substantially* impair the intent and the purpose of the zone plan and zoning ordinance." *N.J.S.A.* 40:55D–70(d) (emphasis added); *Coventry Square, supra,* 138 *N.J.* at 293, 650 *A.2d* 340; *Sica, supra,* 127 *N.J.* at 164–165, 603 *A.2d* 30.

■ In *Medici, supra,* our Supreme Court required "an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." 107 *N.J.* at 21, 526 *A.2d* 109. However, these enhanced standards do not apply when the proposed use is inherently beneficial. *Sica, supra,* 127 *N.J.* at 160–61, 603 *A.2d* 30.

In this case, the Board's limited findings regarding the negative criteria were: (1) the tower would not be aesthetically pleasing to the residents in the area of the proposed location; and (2) the application did not comply with the condition imposed by the

ordinance and would therefore have a negative impact on the health, safety and welfare of the residents of Edison. Although the absence of any credible evidence regarding these "findings," would itself warrant reversal of the Board's action, the Board compounded its error by failing to identify any factual basis for its conclusions, and by failing to weigh or balance these "perceived" negatives against the local and regional benefits flowing from the inherently beneficial nature of the proposed use.[6]

### 1. *Aesthetically Displeasing*

In this case the Board found that the tower would be aesthetically displeasing. The record, on the other hand demonstrated without rebuttal, that: (1) the tower is to be located within the light industrial zone; (2) the tower is one of the smallest used by the cellular industry and has a very narrow cross sectional area comparable to a "glorified light pole or flagpole"; and, (3) the view from most of the homes in the residential zone would be screened.

In *Kingwood, supra,* the Appellate Division gave *no credence* to the Board's conclusion that a proposed tower would constitute a "visual intrusion," since increasing an existing seventy-five-foot antennae to 197 feet would be, at most, a *"minimal"* intrusion on the surrounding community. 272 *N.J.Super.* at 508–09, 640 *A.*2d 356. Although Comcast's proposed tower cannot comply with the

---

[6] That the Board failed to adhere to the quasi-judicial standards mandated by the Supreme Court in the *Sica* and *Coventry Square* cases can be demonstrated from the record itself: Chairman Cimmino: "But if I'm worried that this thing is too close to the neighborhood, *I'll be damned if I care about Coventry Square* or this other [case]." T9/17/96–P20–L9–12. Mr. DeMatteo: "I'm not satisfied with it and *I don't care what the Court said in this instance."* T9/17/96–P21–L1–4. Whether such statements were merely made for effect to please a hostile crowd, or, rather, reveal the true mind-set of the speakers, little doubt remains that such conduct engenders a disquieting disrespect for the rule of law and for the oath taken to faithfully, impartially and justly uphold the Constitution and laws of the United States and the State of New Jersey. Such open hostility to the law, however unpopular the law may be, is highly inappropriate for those sitting in a quasi-judicial capacity. Indeed, continued conduct along this path, given the appropriate application, may well justify recusal.

distance limitation, it does not violate any height restrictions, and it is situated in a zone where far more visually intrusive uses are permitted, none of which require separation from the residential zone by more than 50 feet.

While the tower will no doubt be aesthetically displeasing to some of the neighboring residents, had the Board performed its quasi-judicial obligation to balance the positive and negative criteria, it could not reasonably have concluded on this record that these detriments substantially outweighed the regional benefits of an improved telecommunications service. *See L.I.M.A. Partners v. Northvale,* 219 *N.J.Super.* 512, 520, 530 *A.*2d 839 (App.Div.1987) (statements of individuals that proposed communication facility is aesthetically displeasing are an "inadequate substitute" for appropriate findings based on credible evidence in the record). This is especially so, given *Edison's own legislative choice* to place industrial and residential zones side by side, and to permit towers and other similar utilities, as well as more onerous uses, in the industrial zone. *See L.I.M.A. Partners, supra,* 219 *N.J.Super.* at 526, 530 *A.*2d 839 (negative impact of satellite communication facility in industrial zone on contiguous residences deemed "insubstantial").

Inasmuch as the character of the residential zone was already firmly established by virtue of its proximity to one of Edison's industrial zones, it was unreasonable to conclude that substantial detriment to the zone plan would be occasioned by the proposed communication facility. To suggest that the impact of this facility would even be discernible, when railroad freight yards, truck depots, and warehouse distribution centers need be only 50 feet from the residential zone, is patently unreasonable. As cautioned by the Supreme Court, regional or local institutions recognized as serving the public welfare are "far too important" to be prevented from locating on available, appropriate sites, subject to reasonable safeguards, by the imposition of exclusionary municipal legislation enacted for the sake of preserving the character of a community or some other equally indefensible parochial interest.

*Sica, supra,* 127 *N.J.* at 162, 603 *A.*2d 30, *(citing Roman Catholic Diocese of Newark v. Borough of Ho–Ho–Kus,* 47 *N.J.* 211, 223, 220 *A.*2d 97 (1966)).

### 2. *Negative Impact on Health, Safety and Welfare of the Community*

The New Jersey Radiation Protection Act, *N.J.S.A.* 26:2D–1 through 88 regulates the permissible levels of radiation, including the electromagnetic radiation, which may be lawfully emitted. Under *N.J.S.A.* 26:2D–17:

> No ordinance, resolution or regulation concerning unnecessary radiation adopted by any municipality, county or local board of health shall be effective until a certified copy of such ordinance or regulation has been submitted to the commission and approved by the commissioner of the department. Such ordinances or regulations may not be approved unless the same shall be consistent with this act or any code, rule or regulation issued pursuant hereto.

It is immediately apparent that any attempt by a municipality to regulate the levels of electromagnetic radiation beyond that regulated by the State is precluded. Despite this, the Board not only argued that the proposed tower would have a negative impact on the Township's Master Plan, but it also concluded that the tower would be a "health" or "safety" hazard since it would be placed next to a residential zone and a new park. Such findings, at best, reflect a thinly veiled attempt to regulate indirectly, that which is beyond the scope of the Board's direct jurisdictional authority.

Since the New Jersey Radiation Protection Act governs the permissible level of radiation emissions, it follows that the Board lacked any authority to consider whether the proposed tower raised health or safety concerns. In *L.I.M.A.Partners, supra,* that Board, too, was concerned about the radiation effects of microwaves and whether they posed a "health hazard." 219 *N.J.Super.* at 525, 530 *A.*2d 839. The Trial Court remanded with direction that the Board consider "only zoning evidence and issues" and "*exclude* and not consider any evidence or issues with respect to radiation or radiation health issues." (emphasis supplied). *Id.* at 516, 528, 530 *A.*2d 839. Judge Skillman squarely concluded that such concerns were preempted by the Radiation

Protection Act, *N.J.S.A.* 26:2D–1 through 88, and that any challenge to the issue of preemption "would be clearly lacking in merit." *Id.* at 525 n. 2, 530 *A.2d* 839. *Accord, New Brunswick Cellular, supra,* 270 *N.J.Super.* at 139, 636 *A.2d* 588 (board could not lawfully consider the evidence of "safety concerns" in reviewing a development application for cellular tower; evidence or issues relating to electromagnetic microwave or radio emissions preempted). Since the record is devoid of legitimate evidence substantiating any other types of health or safety concerns, the Board's attempt to restrict the tower's proximity to residential areas on this basis was plainly preempted as a matter of law,[7] and therefore, entitled to no deference. *See Grancagnola, supra,* 221 *N.J.Super.* at 75–76, 533 *A.2d* 982; *see also Pullen v. So. Plainfield Planning Bd, supra,* 291 *N.J.Super.* at 309–10, 677 *A.2d* 278 (Law Div.1995), *aff'd,* 291 *N.J.Super.* at 4–5 n. 4, 676 *A.2d* 1095 (App.Div.1996).

## IV. *CONCLUSION*

For the reasons set forth above, the Board's rejection of Comcast's application for a d(3) variance was clearly arbitrary, capricious and unreasonable. It is therefore reversed, and the matter remanded with directions to approve the variance applications (and requested design waiver) subject to such reasonable conditions as may be imposed upon, or agreed to by, the applicant, (*see Sica, supra,* 127 *N.J.* at 167, 603 *A.2d* 30), and, subject to site plan approval. Jurisdiction is not retained.

---

[7] After January 1, 1997, cellular carriers will be required to meet a new standard which has been promulgated by the FCC pursuant to Senate Bill 652, Sec. 704. The new standard is found in the Report and Order of FCC 96–326, dated August 1, 1996. Under this new standard, however, not only are local authorities preempted from regulating these facilities from the "health concern aspect", so too will the State of New Jersey itself. That is, new federal regulations will preempt *N.J.S.A.* 26:2D–1 through 88 to the extent that those regulations would be applied to any wireless carrier.