740 A.2d 657

SCHOLASTIC BUS CO. INC., AND SYLVIA ROEHRICH T/A WEN-
DELL REALTY, PLAINTIFFS–RESPONDENTS, v. ZONING
BOARD OF THE BOROUGH OF FAIR LAWN, DEFENDANT–
APPELLANT, AND JOEL TANIS & SONS, INC., DEFEN-
DANT/INTERVENER–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1999—Decided November 12, 1999.

50

Before Judges PRESSLER, KIMMELMAN and ARNOLD.

*Robert C. Matule* argued the cause for appellant Zoning Board of the Borough of Fair Lawn.

*Daniel L. Schmutter* argued the cause for appellant Joel Tanis & Sons, Inc. (*Hartman & Winnicki*, attorneys; *Warren S. Robins* and *Mr. Schmutter*, on the brief).

*Joseph R. Torre* argued the cause for respondent (*Joseph R. Torre* and *Ronald S. Bergamini*, attorneys; and on the brief).

The opinion of the court was delivered by

ARNOLD, J.S.C. (temporarily assigned).

At issue in this appeal is whether the decision of the Fair Lawn Zoning Board of Adjustment (Board) denying an application for a use variance under *N.J.S.A.* 40:55D–70(d) was arbitrary, capricious, and unreasonable. Scholastic Bus Company, Inc. (Scholastic) and Wendell Realty (Wendell) had applied for the use variance

to locate a school bus parking and maintenance facility in the I–1 industrial zone. The Board denied the application solely because of the effect on off-site traffic coupled with ingress and egress difficulties at the site. On appeal, the Law Division reversed holding that the denial of the application was arbitrary, capricious and unreasonable. The Law Division entered an order granting the variance, and the Board and an intervenor, Joel Tanis & Sons, Inc. (Tanis), appealed.[1] We affirm the holding of the Law Division that the denial was arbitrary, capricious and unreasonable because the Board failed to consider whether it could reduce the detrimental effect of the proposed use by imposing reasonable conditions on the use. However, we reverse its judgment granting the variance and remand to the Board of Adjustment for reconsideration of the issue of whether reasonable conditions can be imposed sufficient to offset that detrimental effect.

The property in question, a 2.24 acre parcel of land, is owned by Wendell Realty (Wendell) and is leased to Scholastic contingent upon Scholastic obtaining a use variance and site plan approval. It is located in the .I–1 industrial zone in the Borough of Fair Lawn and is designated as Lot 4 in Block 5279. Most of the property is vacant land. It has a 3,600 square foot building which Scholastic intends to use for repair of school buses and vans. On adjacent property, Tanis operates a cement plant and both the Tanis property and Lot 4 are accessed by Range Road, a "paper" street on the tax map of the Borough of Fair Lawn which intersects with River Road, a heavily traveled county road. Tanis' trucks carrying concrete use the Range Road–River Road intersection.

Range Road runs up-hill at a steep grade from the site to River Road. The only other access to River Road from the site is through Wendell Realty's other properties located on adjacent lots (Lot 1, Block 5729 and Lot 1, Block 5835). Wendell Realty,

---

[1] For purposes of this opinion only, we consolidate these appeals which were calendared "back-to-back."

through its lease with Scholastic, has prohibited Scholastic from running its buses and vans through these other properties to access the site.

Scholastic is a regional school bus company serving school districts throughout the area. It proposes to park approximately thirty-five to forty school buses and seventy vans on the property. About eighty-five percent of these vehicles will leave the site between 6:00 a.m. and 7:00 a.m. The vehicles will return to the site between 9:05 a.m. and 9:45 a.m. They will again leave the site at 2:15 p.m. and return between 3:30 and 4:45 p.m.

Scholastic's proposed use would result in eight additional traffic movements per day at the site, four in and four out. These would include: (1) employee vehicles entering the site in the morning; (2) school buses and vans leaving the site in the morning; (3) school buses and vans returning to the site in the morning; (4) employee vehicles leaving the site in the morning; (5) employee vehicles returning to the site in the afternoon; (6) school buses and vans leaving the site in the afternoon; (7) school buses and vans returning to the site in the afternoon; and (8) employee vehicles leaving the site at the end of the day. This traffic would share Range Road with Tanis' cement trucks, that enter and exit the Tanis plant throughout the day. In December 1994, Scholastic applied to the Zoning Officer of Fair Lawn for a Certificate of Occupancy. It was denied by the Zoning Officer on the grounds that a use variance was necessary because, in his opinion, the I–1 Industrial Zone did not permit the use contemplated.

The application for a use variance for Lot 4 was bifurcated, on plaintiffs' motion, from site plan consideration of the proposed development. At the Board hearing on the variance, the applicants presented six witnesses and Tanis presented four witnesses including Richard Coppola, a licensed professional planner with extensive planning experience in New Jersey. Coppola submitted a comprehensive report which the Board received in evidence. Coppola testified that Range Road slopes downward from River Road to the entrance of the site and resembles a driveway more

than a roadway. He noted that Range Road intersects River Road at a forty-five degree angle, requiring extremely sharp right turns from Range Road onto River Road, and sharp left turns from River Road onto Range Road. These conditions, he testified, make it very difficult for vehicles stopped at the top of Range Road to see traffic coming from the East on River Road. He testified that school buses and vans would have a difficult time turning out of Range Road when the Tanis cement trucks are returning to the Tanis property. Significantly, however, Coppola proposed several conditions which could alleviate these concerns. One of those was that the applicant improve the Range Road–River Road intersection.

The Board denied the variance application. In the Board's resolution memorializing its decision, it concluded that a "school bus depot is an inherently beneficial use." However, it also concluded that the negative criteria of *N.J.S.A.* 40:55D–70 were not met because the school vehicles would exacerbate poor traffic movements in the area and increase the risk of collision. The resolution also stated that the Board "is aware of no conditions that it can impose to reduce these detrimental effects of the proposed use variance."

The applicants filed a complaint in lieu of prerogative writs challenging the decision of the Board. The trial court reversed, finding that Scholastic did not need a use variance because the proposed use was a permitted use under the applicable ordinance. Alternatively, the court ruled that even if a use variance were necessary, the application met the positive and negative criteria to support the grant of a variance. Holding that the Board's denial was arbitrary, capricious and unreasonable, the trial court granted the variance. Tanis and the Board filed separate appeals which we consolidate for purposes of this opinion.

■ Preliminarily, we need not dwell on the issue of whether the proposed use was or was not a permitted use because the zoning ordinance has since been amended to specifically state that the storage and operation of trucks, buses, vans and any other

vehicles, including vehicles that transport school children shall be a prohibited use in I–1 and I–2 zoned districts. In the legislative statement accompanying the amendment, Fair Lawn explained that the amendment was adopted to eliminate any perceived ambiguity in the ordinance, and to express the borough's concerns regarding "heavy concentrated periods of traffic." Pursuant to the time of decision rule, the amended ordinance governs. *Kruvant v. Tp. of Cedar Grove*, 82 *N.J.* 435, 414 *A.*2d 9 (1980); *Morris v. Postma*, 41 *N.J.* 354, 362, 196 *A.*2d 792 (1964). Accordingly, Scholastic's application to use the site as a school bus depot requires a use variance.

The Board concluded that the proposed use is inherently beneficial. While Tanis appeals that determination, the Board does not but notes that even if the proposed use is inherently beneficial, so as to presumptively satisfy the statutory positive criteria for grant of a use variance, *N.J.S.A.* 40:55D–70(d), Scholastic must still demonstrate that the negative criteria have been satisfied.

▮▮▮ We hold that the proposed use is inherently beneficial. Scholastic operates a bus business for the transportation of school children fulfilling the public obligation to transport school children. *See N.J. Const.* (1947) art. VIII, § 4, ¶ 3. A school bus facility is a use necessarily accessory to the school buildings themselves, and as such, is clearly inherently beneficial in the zoning sense. *Rolfe v. Borough of Emerson*, 141 *N.J.Super.* 341, 355, 358 *A.*2d 224 (Law Div.1976). Even if not an inherently beneficial use, the evidence before the Board clearly established that the proposed site is particularly suitable for the proposed use and, therefore, satisfied the positive criteria. The site is an industrial zone near a cement plant and an industrial complex containing a warehouse, a tool and dye house, and a roofing contractor. The existing buildings and the street grade would substantially mask the depot from view. Both Scholastic's and Tanis' planners agreed that an industrial zone is an appropriate location for a school bus depot. The site is fully developed and existing. It lends itself to the parking of large vehicles.

*N.J.S.A.* 40:55D–70(d) governs applications for use variances. The statute requires an applicant to prove both positive and negative criteria to obtain a use variance. *Smart SMR of New York, Inc. v. Fair Lawn Board of Adjustment,* 152 *N.J.* 309, 323, 704 *A.2d* 1271 (1998). In general, the positive criteria require that an applicant establish "special reasons" for granting the variance. *Sica v. Board of Adjustment,* 127 *N.J.* 152, 156, 603 *A.2d* 30 (1992). The "negative criteria require proof that the variance 'can be granted without substantial detriment to the public good' and that it will not substantially impair the intent and purpose of the zone plan and zoning ordinance." *Ibid.* If, however, the proposed use is inherently beneficial, an applicant's burden of proof is significantly lessened. An inherently beneficial use presumptively satisfies the positive criteria. *Burbridge v. Mine Hill Tp.,* 117 *N.J.* 376, 568 *A.2d* 527 (1990). With an "inherently beneficial" use, satisfaction of the negative criteria does not depend on an enhanced quality of proof. Instead, the grant of the variance depends on balancing the positive and negative criteria. *Sica, supra,* 127 *N.J.* at 165, 166, 603 *A.2d* 30. When striking the balance, the Board must do the following:

> First, [the local land use] Board should identify the public interest at stake. Some uses are more compelling than others. . . . Second, the Board should identify the detrimental effect that will ensue from the grant of the variance. . . . Third, in some situations, the local Board may reduce the detrimental effect by imposing reasonable conditions on the use. If so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions. . . . Fourth, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.
>
> [*Smart SMR v. Fair Lawn Bd. of Adjustment,* 152 *N.J.* 309, 324, 704 *A.2d* 1271 (1998) (quoting *Sica supra,* 127 *N.J.* at 165, 166, 603 *A.2d* 30).]

In considering Scholastic's application, the Board failed to consider how the detrimental effect could be reduced by imposing reasonable conditions on the use. In his report to the Board, Tanis's planning expert, Coppola, recommended the following five conditions that could be imposed to reduce any detrimental effect on the proposed use:

1. In accordance with normal NJDEP requirements and the recommendations of the "Fair Lawn Borough Master Plan", no additional parking or any paving should be permitted within the flood way of the Passaic River or, at very least, within fifty feet (50') of the wetlands along the river bank;

2. Make certain that sufficient parking for the existing buildings on Lot 1, Block 5835 & Lot 1, Block 5729 will be provided or required that one or both of the buildings be demolished in order to make room for the Scholastic Bus Company;

3. Require the redesign of the onsite traffic circulation, including some reasonable amount of landscaping;

4. Require the applicant to improve "Range Road" to Borough street standards as well as providing improvements to the "Range Road"/River Road intersection; and

5. Scale down the intensity of the proposed development on Lot 4, Block 5729 so that no more than 80% impervious surface coverage is provided.

At the November 8, 1995 hearing, Coppola testified that the proposed use would be "okay" if the proposed changes were made. Later, the following colloquy transpired between the chairman of the Board and Mr. Coppola:

Q. So, Mr. Coppola, from the land use planning perspective, what is your opinion as to whether or not this application merits consideration for a use variance for a school bus depot which would house 115 vehicles?

A. In my opinion, while there are conditions that can be imposed and I've outlined them, I think the conditions are so extreme and unleashed so many other difficulties, that's it's my opinion as a land use planner that this proposal is trying to get too much on too little in the wrong place and with a very unfavorable existing conditions.

Based on this testimony, Tanis argues that "what Coppola was suggesting was massive and terribly problematic. Accordingly, the Board was certainly justified in concluding that there were no conditions that it could impose." We disagree. Contrary to Tanis' characterization, Coppola did not testify that the suggested conditions were unworkable. Neither did he state that the conditions cannot be imposed. He simply gave his opinion as to be feasibility of these conditions. Therefore, the Board's conclusion that it was not "aware" of any conditions it can impose to reduce the detrimental effects of the proposed use seems to be without any basis.

In *TWC Realty Partnership v. Zoning Board of Adjustment of Township of Edison,* 315 *N.J.Super.* 205, 717 *A.*2d 439, (Law Div.1998), *aff'd,* 321 *N.J.Super.* 216, 728 *A.*2d 338 (App.Div.1999), the court similarly noted:

> Inasmuch as the Supreme Court has specifically stated that inherently beneficial uses "should have the right to locate on any appropriate site where the physical impact of their operations can be alleviated to a reasonable extent by the imposition of suitable conditions and restrictions," *Sica,* 127 *N.J.* at 163 [603 *A.*2d 30], . . . relieving a municipal Board of its "amelioration and balancing obligations" would certainly "violate the spirit, if not the precise rationale of *Sica."*
> [*Id.* at 221, 717 *A.*2d 439. (citations omitted).]

We agree with the trial court that the Board failed to fulfill its amelioration and balancing obligations. However, we reverse the granting of the variance. Instead we remand for fact finding by the Board as to the imposition of reasonable conditions on the use. *Dunkin' Donuts of N.J. v. Township of North Brunswick Planning Bd.,* 193 *N.J.Super.* 513, 515, 475 *A.*2d 71 (App.Div.1984).

We further note that at oral argument plaintiff conceded that it had not made specific proposals to the Board respecting traffic-ameliorating conditions because it regarded that undertaking as more appropriate to its anticipated ensuing site plan application. While we appreciate plaintiff's apparent motivation of reducing the cost of the use variance proceeding, we are nevertheless persuaded that the traffic concerns inherent in both the variance application and the site plan application are so intertwined as to render the bifurcation improvident. We also point out that while the expert testimony addressed environmental concerns, the Board's resolution did not refer to them. Again these concerns are relevant to both applications and are most appropriately considered in a consolidated proceeding.

We modify the judgment of the trial court. On our own motion we vacate the bifurcation order of the Board and remand for its consideration of the use variance application and the site plan application in a consolidated proceeding in a manner consistent with this opinion.