871 A.2d 152

ISIHOS BROTHERS PARTNERSHIP, PLAINTIFF, v. TOWNSHIP OF FRANKLIN, TOWNSHIP OF FRANKLIN ZONING BOARD OF ADJUSTMENT AND TOWNSHIP OF FRANKLIN ZONING OF-FICER, DEFENDANTS.

Superior Court of New Jersey
Law Division Gloucester County

Decided May 18, 2000.

*Joseph J. Hoffman, Jr.,* for plaintiff. (*Hoffman DiMuzio & Hoffman,* attorneys).

*John Matheussen,* for defendant Township of Franklin.

*B. Michael Borelli,* for defendant Township of Franklin Board of Adjustment and Zoning Officer.

McDONNELL, J.S.C.

In this zoning appeal, the court holds that the Board of Adjustment did not have authority to require a use variance pursuant to *N.J.S.A.* 40:55D–70(d) for a subsurface sewage disposal system ("septic system") which had been approved by the Department of Environmental Protection ("DEP"). The issue presented is whether the Board of Adjustment acted within the scope of its authority when it required plaintiff to apply for a use variance for septic disposal beds to be constructed on a lot non-contiguous to the restaurant that the beds would serve. The disposal beds, sometimes called septic field beds or treatment beds, were a component of the approved septic system. There are no reported decisions on point.

Following the court's opinion on May 18, 2000, plaintiff's damages claim was dismissed without prejudice at the request of the parties to allow extended settlement discussions. By order dated July 23, 2004, plaintiff and the Township agreed, among other things, that plaintiff's damages claim would be dismissed with prejudice and that the Township would complete a sewage/waste water collection system with a service area that would include the restaurant by December 31, 2006.

### Abbreviated Statement of Facts

Plaintiff, Isihos Brothers Partnership, t/a Pegasus, operates a restaurant located at the intersection of two state highways in the Township of Franklin ("the Township").

Septic systems, including disposal beds, are the primary method of sewage disposal and treatment in the Township. The Township has not provided for the collection or treatment of sewage. The Township has not created a governmental authority to oversee the collection and treatment of waste water. There is no sewerage authority pursuant to *N.J.S.A.* 40:14A–1 to 45. There is no municipal utilities authority pursuant to *N.J.S.A.* 40:14B–1 to 78.

The local Board of Health has jurisdiction over the design of septic systems with total daily volume that does not exceed 2000 gallons of sewage. *N.J.A.C.* 7:9A–1.8(a). The DEP has design jurisdiction over septic systems with total daily volume in excess of 2000 gallons of sewage. *N.J.A.C.* 7:9A–1.8(b).

In 1997, the septic system on the restaurant property was malfunctioning for the third time in eight years. Based on the gallonage, plaintiff submitted plans for a replacement septic system to the DEP. The DEP approved the plans which included disposal beds located on a tract of land ("Lot 11") that was non-contiguous to the restaurant property. The approved plans provided that effluent from the restaurant property would be discharged to disposal beds on Lot 11 via sewerage installed within the right-of-way of the public street. The DEP issued a Treatment Works Approval ("TWA") Permit pursuant to *N.J.A.C.*

7:14A–22.3 and a New Jersey Pollutant Discharge Elimination System–Discharge to Ground Water ("NJPDES–DGW") Permit pursuant to *N.J.A.C.* 7:14A–7.1 to 7.12.

The Township zoning code does not list septic systems or disposal beds among the permitted uses [1] or accessory uses [2] in any district. The zoning officer advised plaintiff that the disposal beds were not a permitted use on Lot 11. He directed plaintiff to apply for a use variance pursuant to *N.J.S.A.* 40:55D–70(d).

Plaintiff appeared before the Board of Adjustment seeking a use variance to permit the construction of disposal beds in a C–1 Neighborhood Commercial District. Plaintiff did not seek an interpretation of the zoning code pursuant to *N.J.S.A.* 40:55D–70(b).

At the public hearing on plaintiff's variance application, engineering experts testified about soil suitability, permeability testing, and other design criteria for plaintiff's replacement septic system. The Board heard testimony about alternatives to the approved septic system. In denying the variance, the Board of Adjustment held that disposal beds must be associated with a permitted use on the same lot.

This litigation ensued.

---

[1] Chapter 35–121 permits retail stores, business and professional offices, banks and financial institutions, mass transit stations, hotels and motels, schools, churches, theaters (except drive-in), single-family and two-family residences in connection with business use, and signs. This Chapter also permits customary residential accessory uses and customary commercial accessory uses. Certain planned commercial developments are permitted as conditional uses when authorized by the Planning Board.

[2] Chapter 25–121 K permits residential accessory uses such as home offices of professionals, home occupations, room rental and meals for no more than six persons, private garages, signs, fences, swimming pools, farm buildings for livestock, seasonal labor housing facilities, tennis courts, parking lots, and driveways.

Chapter 35–121 L permits commercial accessory uses such as off-street parking and loading and ramps, storage areas and buildings, and limited manufacturing clearly incidental to a retail use.

## Discussion and Applicable Law

■ The decision of the Board of Adjustment to require plaintiff to obtain a use variance prior to construction of the approved disposal beds is a determination of law, not fact, and is subject to *de novo* review. In *TWC Realty v. Zoning Bd. of Adjust.*, 315 *N.J.Super.* 205, 211–12, 717 *A.2d* 439, 442 (Law Div.1998), *aff'd o.b.* 321 *N.J.Super.* 216, 728 *A.2d* 338 (App.Div.1999), Judge Wolfson discussed the appropriate scope of review:

> The Board of Adjustment is an independent administrative agency whose authority is derived from the Legislature via the Municipal Land Use Law ("MLUL"), *N.J.S.A.* 40:55D–1 to 129, the enabling authority which authorizes and defines the limits of a municipality's procedural and substantive power to regulate land development within its borders. Within this regulatory framework, the Board of Adjustment is vested with the primary authority under *N.J.S.A.* 40:55D–70(d) to determine whether variances should be granted .... *See N.J.S.A.* 40:55D–76(b). These delegated powers may not be exercised by any other body.
>
> In recognition of the fact that local officials are presumed to be "thoroughly familiar" with their community's characteristics, zoning board decisions, when factually grounded, are ordinarily cloaked with a presumption of validity, allowing the board wide latitude in the exercise of the discretion delegated to it. On the other hand, however, a board's decision regarding a question of law, such as the scope of its own authority or jurisdiction, is subject to a *de novo* review by the courts, and is entitled to no deference since a zoning board has "no peculiar skill superior to the courts" regarding purely legal matters.
>
> [(citations omitted)].

Here, the determination that a use variance was required, and the determination that septic disposal beds must be associated with a permitted use on the same property, are matters of law and subject to *de novo* review on appeal.

■ The Board of Adjustment argues that the applicant consented to have the Board act on its application for a use variance pursuant to *N.J.S.A.* 40:55D–70(d) by not pursuing an interpretation of the code pursuant to *N.J.S.A.* 50:55D–70(b), While the applicant agreed to proceed to a substantive hearing on the variance without the benefit of an interpretation, such consent does not give the Board of Adjustment power beyond that which it derives from the MLUL. "Because it is a 'creature [ ] of statute [, it] ... may exercise only those powers granted by the statute.'" *Paruszewski v. Tp. of Elsinboro*, 154 *N.J.* 45, 54, 711 *A.2d* 273, 277

(1998) (citation omitted). The MLUL does not give the Board of Adjustment authority over septic systems.

The Water Pollution Control Act, *N.J.S.A.* 58:10A–1 to 60, gives the DEP the authority to implement the regulatory provisions of the Federal Water Pollution Control Act Amendments of 1972, 33 *U.S.C.A.* § 1251 to 1387. The DEP is responsible for the administration of the state's water pollution control program. *See N.J. Builders' Ass'n v. Dep't of Envtl. Prot.*, 169 *N.J.Super.* 76, 404 *A.*2d 320 (App.Div.1979). The DEP has established Standards for Individual Subsurface Sewage Disposal Systems ("Standards") set forth in *N.J.A.C.* 7:9A–1 to 12.8. One of the purposes of the Standards is to "[p]revent pollution of the waters of the State that results from improper location, design, construction, installation, alteration, operation or maintenance of individual subsurface sewage disposal systems...." *N.J.A.C.* 7:9A–1.1. The scope of the Standards includes "location, design, construction, installation, alteration, repair and operation of individual sewage disposal systems." *N.J.A.C.* 7:9A–1.2 (a). The Standards "shall constitute the rules of the [DEP] and shall be regarded as uniform standards, in force throughout the State, governing individual subsurface sewage disposal systems." *N.J.A.C.* 7:9A–1.2 (b).

■ Plaintiff's malfunctioning septic system was regulated and controlled by the Standards. *N.J.A.C.* 7:9A–3.4 describes malfunctioning systems and sets forth the requirements which shall be met by the owner when it is necessary to repair, alter or replace a malfunctioning system. *N.J.A.C.* 7:9A–10.1 sets forth the general design criteria for septic field treatment beds. Plaintiff complied with the requirements of the Standards. Once the DEP approved the plans and issued the applicable permits, plaintiff was to apply to the local Board of Health for the required permit to construct the septic system. *N.J.A.C.* 7:9A–2.1; *N.J.A.C.* 7:9A–3.5(a). Plaintiff was following the protocol set forth in the Standards until the zoning officer intervened.

The DEP, not the Board of Adjustment, has regulatory authority in the area of sewage disposal and may, as it did in this case,

approve off-site treatment. Because the Township is a municipality without a public wastewater collection and treatment system, septic systems are mandatory for any land use that generates sewage. Sewage must be treated to reduce contaminants prior to discharge to soil. *N.J.S.A.* 58:10A–6(d)(3). The location, design, construction, and operation of a septic system are within the exclusive jurisdiction of the DEP. The Board of Adjustment had no power to interfere with the DEP in the exercise of its statutory responsibility and regulatory authority in the area of sewage disposal. *See Holgate Prop. Assocs. v. Tp. of Howell,* 145 *N.J.* 590, 679 *A.*2d 613 (1996), (analysis of the preclusion of the municipal zoning ordinance by the Water Pollution Control Act and the Solid Waste Management Act).

## Conclusion

Judgment is entered in favor of plaintiff declaring the requirement of a use variance prior to construction of an approved replacement septic system to be null and void as beyond the power and authority of the Board of Adjustment.