**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3485-21

MARC and DEBORAH SHAMS,
husband and wife,

     Plaintiffs-Appellants,

v.

PLANNING BOARD OF THE
VILLAGE OF LOCH ARBOUR
and VILLAGE OF LOCH
ARBOUR,

     Defendants-Respondents.

_____

Argued October 31, 2023 – Decided November 28, 2023

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2478-20.

Jessica L. Sweet argued the cause for appellants (Sweet & Bennett, LLC, attorneys; Jessica L. Sweet, of counsel and on the briefs).

Lance N. Olitt argued the cause for respondents (Kluger Healey, LLC, attorneys; Lance N. Olitt, on the brief).

PER CURIAM

Plaintiffs Marc and Deborah Shams appeal from a June 1, 2022 final judgment, which dismissed their complaint in lieu of prerogative writs and entered judgment in favor of defendants, the Village of Loch Arbour (Village) and the Planning Board of the Village of Loch Arbour (Board). Plaintiffs challenge the trial judge's denial of an automatic approval of a Certificate of Appropriateness (COA) and finding that the Board had the broad authority to deny their application requiring bulk variances. Following our review of the arguments presented on appeal, the record, and the applicable law, we affirm.

I.

In December 2016, plaintiffs, husband and wife, purchased a residential lot on Euclid Avenue in Loch Arbour. In January 2018, plaintiffs filed an application with the Village zoning officer for a permit to remove an existing structure and to construct a new, single-family home, with a shed and in-ground pool. As plaintiffs' application had required multiple variances, the matter was referred to the Board. The Board heard plaintiffs' application over three days, between April and July 2018. Plaintiffs sought several variances, including a variance to build a third half-story encompassing "proposed habitable space for bedroom [numbers six, seven, eight] and a bathroom with walk[-]up stairs." During the hearing process, plaintiffs revised their plans multiple times but

thereafter stipulated to plans which required no variances. After the Board approved the residential construction plans, plaintiffs requested COA approval from the Board, in its capacity acting as the Historic Preservation Commission (Commission), pursuant to N.J.S.A. 40:55D-25(d)[1] and the Village Historical Preservation Ordinance 2017-424.[2]

On August 15, 2018, the Board, acting as the Commission, approved plaintiffs' application for a COA, with conditions. On August 31, the Board and Commission separately adopted resolutions on the application and COA issuance. The Board memorialized its findings regarding plaintiffs' variance application in a fourteen-page resolution, which described plaintiffs' stipulations, the final approved plans, and multiple approval conditions. Pertinent to this appeal, those conditions included that the COA was "contingent upon restricting use of the third floor for storage and utiliz[ation] only with

---

[1] Under N.J.S.A. 40:55D-25(d), "[i]n a municipality having a population of 2,500 or less, the planning board, if so provided by ordinance, shall exercise, to the same extent and subject to the same restrictions, all of the powers of a[] historic preservation commission." The responsibilities of a historic preservation commission include providing written reports regarding applications of zoning ordinance provisions concerning historic preservation. N.J.S.A. 40:55D-109. Ordinarily, a planning board must refer every application for development in a historic zoning district to the historic preservation commission. N.J.S.A. 40:55D-110.

[2] The Village provided for the creation of a historic preservation commission as permitted by N.J.S.A. 40:55D-107.

A-3485-21

access by way of pull[-]down stairs to the third floor."  The Commission, in its companion resolution, considered plaintiffs' "constructi[on] of a two-story single[-]family dwelling," and included that it was "of great significance to the Board's approval of the structure as proposed" that plaintiffs be in "compliance with all findings, representation and conclusions as set forth in the companion resolution."  On September 12, plaintiffs received a construction permit.

Coterminous to the approvals, the Village adopted multiple ordinances governing residential construction.  On July 9, the Village adopted Ordinance 2018-443, which amended the minimum side yard setback to "greater than [five] feet per side or [ten percent] of the lot width per side."  Thereafter, on November 20, the Village adopted Ordinance 2018-446, which amended the means for measuring building height as:

> the vertical distance measured to the <u>highest point of the roof from the mean level of the curb in front of the center of the building.  No building shall exceed [thirty-five] feet in height.  No building shall contain more than two[-]and[-]one-half stories</u>.  Flat roofs shall be prohibited, except as an architectural feature.
>
> [(Emphasis added).]

The Village also adopted Ordinance 2018-447, which permitted buildings to have two-and-a-half stories, and defined "Half Story" as:

> the space above the first or second story which shall have a pitched roof to begin at the ceiling joists line of

A-3485-21

> the story below and which pitch shall have a minimum
> slope of [thirty percent] . . . . Such space, if finished,
> shall have a minimum vertical wall of five . . . feet in a
> finished area including deck and balcony space not to
> exceed fifty . . . percent of the second story living space
> in the case of a two[-]and[-]one-half . . . story structure.

The Village additionally adopted Ordinance 2018-450 (the Historic Preservation Ordinance), which mirrored and replaced Ordinance 2017-424 and defined the historic area.

Following the adoption of the ordinances, on December 7, plaintiffs filed a new zoning permit application, allegedly only seeking to "add [two] dormers" to the "east side and west side" of their house. The attached architectural plans, dated August 26, indicated "proposed [two-]story house" and only depicted an "open attic." Four days later, the Village zoning officer denied the application, providing that "no more than [two] stories" were permitted. Thereafter, plaintiffs' architect corresponded with the zoning officer and provided further documentation.

On January 3, 2019, after reviewing the documentation with the Board's counsel, the zoning officer reversed the denial and granted the request for "two dormers." The zoning officer provided that plaintiffs were required to comply with the 2018 resolutions and, as such, were "specifically limited to the size and configuration of the non-habitable attic" shown in the approved plans. Board

5

counsel confirmed by letter dated January 14 that plaintiffs' dormer application related back to the 2018 plan and COA approvals; therefore, it would be heard "under the [COA] Ordinance 2017-424 pursuant to the Time of Application Rule."

Several days later, plaintiffs again modified their project. On January 22, plaintiffs' architect submitted an application for a COA. The application form requested a designation of the construction alteration sought, including designating a "Major Alteration" defined as a "change or modification of major architectural elements to a building . . . roof including, but not limited to, . . . dormers." Plaintiffs failed to designate either a "Minor Alteration" or a "Major Alteration," but their architect handwrote in the description "additional attic storage space" and "amended design request of previously approved plans— revised design of attic area only per attached drawings and prior correspondence." The application was certified as true. Plaintiffs provided additional new architectural plans with different dates, including an attic floor plan stating, "uninhabitable attic."

Plaintiffs continued construction without approval and built a non-conforming structure, which resulted in a construction official's stop-work order on March 14. The construction official permitted plaintiffs to continue construction "all at [their] own risk."

6

Thereafter, on April 7, plaintiffs published notice of their amended COA application hearing scheduled for April 17. Plaintiffs' notice only stated their application "add[ed] two . . . dormers east side and west side to the previously approved resolution adopted on August 15, 2018." The Commission heard the matter approximately eighty-six days after plaintiffs filed the application, and ten days from the notice. Mr. Shams appeared, self-represented, with his architect. At the hearing, Mr. Shams conceded the proposed "dormers" included an expansion of additional living space, rather than "attic storage space" as stated in the revised January 2019 application. The Commission determined, because the space proposed was a third floor rather than two dormers, and the application indicated an intention for attic storage space rather than living space, the notice published was clearly misrepresentative.

After the hearing, the Commission referred the application to the Board engineer for review because questions existed regarding the dormers, habitable third floor, and roof line. The Board granted plaintiffs an extension of the hearing. Because the Board engineer had not reviewed and reported on the application by the next hearing date, the Board again extended the application.

On August 23, plaintiffs' newly retained counsel filed another amended application with the Board and the Board's engineer, including revised architectural plans dated August 1. Counsel submitted fourteen sets of plans,

7

which "clearly depict[ed] the changes between the proposal approved by [the] Planning Board Resolution [on] July 16, 2018, as compared to the as-built/proposed development."

The newly submitted plans distinguished between the significantly different as-built construction and the previously approved attic floor area and total square footage. The plans also included a habitable third floor half-story. Under the new height ordinance, plaintiffs' proposed two-and-one-half-story building was nonconforming at 36.75 feet. Accordingly, variance approval was required for the as-built half floor. Under the new setback ordinance, plaintiffs' revisions also required a setback variance for a Bilco door.

On October 25, plaintiffs published notice of their new application before "the Planning Board of the Village of Loch Arbour." Plaintiffs' notice provided the required variances which were to be heard by the Board and stated in pertinent part:

> The home, accessory structures and site improvements were not constructed in accordance with the aforesaid approval and without the benefit of amended approvals. Accordingly, through this instant application, [a]pplicant seeks an amended [COA] in order to legalize the changes made during construction as well as new, proposed changes. The changes already made and proposed to the home include: relocation/addition/deletion of windows and doors; alteration of porch and front elevation design; . . . expanded third floor with stair access for proposed

habitable space; extension of gable roof line to the east and the west to accommodate the expanded third floor living space; and, alteration of window and door size, configuration and designs.

In addition to the [COA], [a]pplicant also seeks bulk variance relief pursuant to [N.J.S.A.] 40:55D-70[(c)] as follows: building height of 38.75 feet, whereas a maximum of 35 feet is permitted and 36.75 feet exists; and side yard setback of 5.33 feet to the [B]ilco doors and 9.25 feet to the roof overhang exists.

Applicant also expressly make[s] application for any exceptions, interpretations, waivers, variances and other approvals as reflected on the filed plans as same may be further amended from time to time without further notice and as may be determined to be necessary by the Board or its professionals during the review and processing of the application.

[(Emphasis added).]

On November 4, Mr. Shams, plaintiffs' counsel, and plaintiffs' architect appeared before the Board. The Board Chairman opened the hearing and clarified, "I understand this is an entirely new application, even though it was previously submitted to the Board on one other occasion." (Emphasis added). Plaintiffs' counsel confirmed the hearing was in consideration of a new application. Plaintiffs' counsel also confirmed variances were requested for "the side yard setback," as "it relate[d] to the [B]ilco door," and the height of the house from the Board, in addition to a new COA from the Commission.

A-3485-21

During the hearing, plaintiffs again introduced revised architectural plans, which were dated October 24, 2019. The Board raised numerous concerns with the proposed plans, including the changed window structure, the new location of a previously approved Bilco door, the new habitable third floor, the non-conforming height, and the roof structure alteration. In response, plaintiffs' counsel requested an adjournment to review the concerns raised by the Board, which the Board approved.

Following multiple adjournments for various reasons, including the COVID-19 pandemic, the Board arranged for a continued remote hearing on April 29, 2020. The Board heard testimony from plaintiffs' architect and the Board engineer. At the hearing, plaintiffs altered their argument and stated: "It's the applicant's position that, one, the [COA] standards have been met; two, the variance standards were met at the last hearing through the testimony of [the architect]; and three, in the alternative, a variance isn't necessary because they were grandfathered in by the zoning permit."

The Board voted on the height and setback variances requested and denied the variances in a four-to-two vote. Plaintiffs then withdrew their setback variance and requested a vote anew, but the Board still denied the height variance. At plaintiffs' counsel's request, for completeness, the Board, acting as the Commission, also unanimously voted to deny plaintiffs' application for a

10

COA. On June 17, the Board memorialized by resolution its denial of plaintiffs' variance requests, including findings from the November 4, 2019 and April 29, 2020 hearings, and the Commission's resolution memorialized the COA denial.

On August 7, plaintiffs filed an eight-count complaint in lieu of prerogative writs seeking to reverse and set aside the denials of plaintiffs' variances and COA, and to rescind the stop-work order. In May 2021, the judge conducted a bench trial and thereafter issued an oral decision. On June 1, 2022, the judge entered final judgment in the Board's favor, affirming the resolutions, denying plaintiffs' applications, and dismissing plaintiffs' complaint. This appeal followed.

Plaintiffs argue on appeal that the judge erroneously: failed to find automatic approval of the amended COA was required after forty-five days under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112; misapplied the recognized judicial exceptions to the automatic approval doctrine; and found the Board was not restricted from "broadly review[ing] and overruling the zoning permit approval once" the zoning officer referred plaintiffs' application to the Commission for approval in "compliance with the historic preservation ordinance." Plaintiffs do not appeal denial of the variances.

11

"[W]e are bound by the same standards as was the trial court" when reviewing the validity of a local board's decisions. Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). Like the trial court, our review of a planning board's decision is limited. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). A court "may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). We "give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462.

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013). Consequently, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999). Planning

boards are provided "wide latitude in the exercise of the delegated discretion" under MLUL due to their particular "knowledge of local conditions." Burbridge v. Mine Hill Twp., 117 N.J. 376, 385 (1990) (quoting Medici v. BPR Co., 107 N.J. 1, 23 (1987)).

It is well recognized local board members are more "familiar with their communities' characteristics and interests" and are better suited to decide concerns on local zoning regulations. Pullen v. Township of S. Plainfield Plan. Bd., 291 N.J. Super. 1, 6 (App. Div. 1996). Determinations on questions of law in land use matters are reviewed de novo. Bubis v. Kassin, 184 N.J. 612, 627 (2005).

## III.

Plaintiffs' argument that the judge erroneously failed to apply the required automatic approval to their COA application is without merit. Plaintiffs accurately cite that the Historic Preservation Ordinance incorporates by reference the MLUL provision N.J.S.A. 40:55D-111, which provides that a historic preservation commission "shall report to the administrative officer within [forty-five] days of . . . referral of the application" and that the failure to report "shall be deemed . . . in favor of issuance of the permit." (Emphasis added). However, plaintiffs may not avail of an automatic approval because

they failed to submit a completed COA application for the Commission's consideration.

We concur with the judge's findings that plaintiffs' December 2018 and January 2019 applications misrepresented the building alterations for approval, and plaintiffs' actions created the confusion and delay. It is undisputed the zoning officer rejected the December 2018 application, then granted the application only after further documentation was submitted, and ultimately approved it conditioned on a "non-habitable attic that is shown on the approved plans." The judge correctly found plaintiffs' December 2018 application "incorrectly presented" only two dormers for a zoning permit determination.

Thereafter, the January 2019 amended COA application, which plaintiffs seek automatic approval for, was also deficient. Plaintiffs' amended application for a COA approval was submitted days after the December 2018 application was approved with specific conditions. Plaintiffs' architect certified the application only requested "additional attic storage." Notably, the construction official's stop-work order noticed plaintiffs, before they published the April 7 notice of their COA application, that "Board approval must be received for third floor addition." As the judge correctly found, the record demonstrates neither application was complete and plaintiffs' inaccurate, misrepresentative plans confounded any completed application determination by the zoning officer,

14

Board, and Commission. Because plaintiffs' applications were not complete, the forty-five-day automatic approval was not triggered.

Plaintiffs misapprehend that their mischaracterized January 2019 COA application foreclosed the Board's approval of necessary variances. An application requiring variance approval for development shall first be filed before the appropriate board. N.J.S.A. 40:55D-25 and -60. We discern no reason to disturb the judge's decision that the Board acted reasonably in its consideration of plaintiffs' application.

The MLUL provides that "[t]he planning board and board of adjustment shall refer . . . every application for development submitted to either board for development in historic zoning districts" to the Commission and the "referral shall be made when the application for development is deemed complete or is scheduled for a hearing." N.J.S.A. 40:55D-110. Only after an application for required variances is complete or scheduled does the Board refer the COA application to the Commission. It is clear statutory provisions "must be viewed not in isolation but 'in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme.'" Tumpson v. Farina, 218 N.J. 450, 467 (2014) (quoting Wilson by Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)).

Indeed, plaintiffs proceeded with their new application requesting variances in August 2019, and conceded that their January 2019 application was incomplete. Plaintiffs, in their October 25, 2019 notice of hearing, stated "[i]n addition to the [COA], [a]pplicant also seeks bulk variance relief." (Emphasis added). Plaintiffs' counsel admitted at the November 2019 hearing that "the side yard setback, as it relate[d] to the [B]ilco door," and the height of the house both required variances. We observe "when a developer, with the consent of the planning body, withdraws an application or unilaterally amends it to such an extent that effectively it is a new application, the board need not act within the original time constraints." Amerada Hess Corp. v. Burlington Cnty. Plan. Bd., 195 N.J. 616, 640 (2008). Additionally, under the MLUL, an extension of a statutory deadline may be effective where it is agreed upon by the parties. Id. at 641. The MLUL authorized the Board to review the application once it was determined variances were required. The Commission, after the Board's review, was then accordingly enabled to "report" its decision on the issuance of a COA.

Plaintiffs' argument that the judge misapplied the recognized automatic approval exceptions is also without merit. Our Supreme Court has "recognized a narrow exception for cases in which a planning board's violation of the statutory time frame was inadvertent or unintentional . . . [and] held that automatic approval would not advance the legislative goals underlying the

16

statute." Id. at 619. An exception exists where delay is caused by "a reasonable misapprehension regarding whether there was a complete application pending before the board." Id. at 635. Here, if there was any "misapprehension" by the Board it was certainly "reasonable" as caused by plaintiffs' submission of a deficient COA application. We concur with the judge that if a mistake occurred in not providing a timely COA "report," the violation of the prescribed time was inadvertent and excusable.

Further, even if plaintiffs' application were complete, we reject plaintiffs' contention that an application that misrepresents construction alterations is entitled to automatic approval for any modification embedded in attached plans. Plaintiffs' argument is unsupported.

Lastly, we find no merit in plaintiffs' argument that the judge erred in finding the Board had broad authority to review plaintiffs' home construction. Although plaintiffs filed amended applications under the time of application rule, alleging modifications to the 2018 approvals, the judge correctly found the amendments were improvidently submitted as "the actual application before the Board in November and April involved different plans regarding specific subject matter of those [new] ordinances," and that the prior 2017 ordinances did not apply to the "revised setback and roofline window plans that were eventually constructed."

17

We conclude, as did the trial judge, that both the MLUL and the local ordinances authorized the Board to review plaintiffs' application which required variances. As the judge correctly observed, the delay here was the direct result of plaintiffs' "ever-changing plans [which] were somewhere between cavalier and flagrant disregard of the rule of law set forth by . . . the MLUL." Having determined the Board correctly denied variance relief, the judge found the COA was "moot because it was contingent upon the application." We discern no reason to disturb the judge's well-reasoned decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3485-21